NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

WEST COAST CASKET COMPANY,
INC., Respondent.

No. 72–1026.

United States Court of Appeals,
Ninth Ciruit.

Nov. 17, 1972.

Michael Winer, Atty. (argued), Marcel Mallet-Prevost, Asst. Gen. Counsel, NLRB, Washington, D. C., Wilford W. Johansen, Director, Region 21, NLRB, Los Angeles, Cal., for petitioner.

Carl Minton (argued), of Minton & Minton, Michael Posner, of Geffner &

Satzman, Los Angeles, Cal. (for charging party) for the respondent.

Before: HAMLEY and MERRILL, Circuit Judges, and POWELL, District Judge *.

HAMLEY, Circuit Judge:

The National Labor Relations Board has petitioned for enforcement of its order issued against West Coast Casket Company, Inc. (West Coast) and Mrs. Gladys Selvin, West Coast's bargaining representative.

In adopting the findings of the trial examiner, the Board held West Coast had violated the following sections of the National Labor Relations Act (Act): (1) section 8(a)(3), 29 U.S.C. § 158(a)(3), by discharging three employees because of their union activities; (2) section 8(a)(5), 29 U.S.C. § 158(a)(5), by, through its bargaining agent, failing to bargain in good faith with the certified union representatives; and (3) section 8(a)(1), 29 U.S.C. § 158(a)(1), by sending employees telegrams threatening loss of employment if they took part in an unfair labor practice strike. 192 NLRB No. 78 (1971).

The Board adopted the trial examiner's recommendation that West Coast be ordered to cease and desist from the unfair labor practices found, to bargain with the unions, to reinstate two of the three employees who, the Board found, had been discharged because of their union activity (one of the three had been rehired one year after his discharge), to make those three employees whole for any loss of pay resulting from the discrimination against them, to offer reinstatement to the strikers, and to post the usual notices. Mrs. Selvin was also ordered to cease and desist from her unfair labor practices.

This court has heretofore entered an order granting enforcement against Mrs. Selvin following her motion stating that she did not object to enforcement against her. For the reasons stated be-

---

* The Honorable Charles L. Powell, United States District Judge for the Eastern District of Washington, sitting by designation.

low we will grant enforcement of the Board's order against West Coast, with one indicated exception.

In resisting enforcement, West Coast makes three arguments. First, it argues that the Board's order is now partially moot because West Coast sold all of its assets on July 1, 1972 and has had no employees since June 30, 1972. Second, West Coast contends that the Board erred in refusing to reopen the hearing to receive certain additional testimony. Third, West Coast challenges the sufficiency of the evidence supporting the Board's conclusions with respect to each of the unfair labor practices.

■ With regard to the mootness contention, West Coast asks that this court either enlarge the record of the hearing by including an affidavit concerning the discontinuance of operations or remand the case to the Board for a hearing on this point.

Section 10(e) of the Act provides that the latter of these alternatives is appropriate when the additional evidence is "material and . . . there were reasonable grounds for the failure to adduce such evidence in the hearing before the Board." However, in Southport Petroleum Co. v. N.L.R.B., 315 U.S. 100, 6 S.Ct. 452, 86 L.Ed. 718 (1942), the Supreme Court held that a dissolution and transfer of assets to another company subsequent to a Board order which bound the officers, agents, successors and assigns was immaterial to an enforcement proceeding. Instead, the Court reasoned, these developments are proper subjects for later compliance or contempt proceedings, in which the performance of any impossible obligation may be excused. This reasoning applies to the present case and, therefore, West Coast's mootness contention is without merit.

■ West Coast's second contention is that the Board incorrectly refused to reopen the record to receive testimony of two West Coast supervisors on the is-

sue of the allegedly discriminatory discharges. The motion to reopen the record was filed almost five months after the close of the hearing. The delay, West Coast argues, was caused by its inability to review the testimony of the discharged employees with the supervisors prior to the close of the hearings.

Assuming the testimony of the supervisors is material to the discharges, this court may order the Board to take additional evidence only if "there were reasonable grounds for the failure to adduce such evidence in the hearing." 29 U.S.C. § 160(e). We do not believe that the grounds West Coast urges here satisfy the reasonableness requirement.

This is not a case in which the company should have been surprised by the testimony given at the hearing. The charge against West Coast, which was filed more than one year before the hearing, listed the names of all employees alleged to have been discharged because of their union activities. West Coast had sufficient information and time to learn the nature of their proposed testimony prior to the hearing. Its failure to do so will not excuse its failure to have the supervisors testify at the hearing. See N.L.R.B. v. Boyer Brothers, Inc., 448 F.2d 555, 565 (3d Cir. 1971).

■ West Coast's final contentions concern the sufficiency of the evidence supporting the Board's conclusions on the unfair labor practice charges. The Board's conclusions must be affirmed if, considering the record as a whole, the conclusions are supported by substantial evidence. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Each charge will be considered separately.

Prior to July 1, 1972, West Coast manufactured, sold and distributed metal and wood caskets at two plants in Los Angeles. In 1968, West Coast's president decided to discontinue some of its manufacturing procedures and to phase

out one of the plants. During the first part of 1969, when West Coast alleges it had reached a point in its phasing out program at which it became necessary to lay off some of its workers, two unions began a joint program to organize the employees.

Roy Cooper, an employee who was an active participant in the campaign to organize the workers, was laid off in April of 1969. Shortly after the representation election, in which a majority of the employees voted for the unions, Rudolfo Ramirez, the employee who initiated the unions' contact with West Coast's employees, was discharged. A third employee who was active in union activities, Aurelio Mena, was also discharged a short time after the representation election.

The Board found that these discharges were motivated by the employees' union activities, in violation of section 8(a)(3) of the Act. West Coast contends that the sole cause for the discharges was the phase-out of one of the plants.

To determine whether a discharge violates section 8(a)(3), "(t)he test is whether the business reason or the protected union activity is the moving cause behind the discharge." N.L.R.B. v. Ayer Lar Sanitarium, 436 F.2d 45, 50 (9th Cir. 1970). In applying this test, the total setting in which the discharges occurred is to be considered. Santa Fe Drilling Co. v. N.L.R.B., 416 F.2d 725, 730 (9th Cir. 1969).

Cooper, Ramirez and Mena had each been employed by West Coast for more than seven years. When Cooper and Mena were fired, their supervisors indicated that the discharges were probably because of their union activity. West Coast's president told Ramirez, shortly before his discharge, that if he wanted to organize he should let the unions pay his wages.

Although West Coast did plan to phase out one of the plants, more than two months after their discharges a supervisor told Ramirez and Mena that there was too much work for the number of workers presently employed.

There is other evidence to support the Board's conclusion that the employees' union activities constituted the moving cause behind their discharges. Cooper visited the plant more than one year after he was fired and observed employees doing the same work he had done at the time he left West Coast. Mena was rehired almost one year after his discharge, indicating that he could have been transferred to the other plant rather than fired.

It is the special province of the Board to determine what the employer's motivation was, and, under these circumstances, the Board was not required to give great weight to West Coast's alleged justification for the discharges. See Ayer Lar Sanitarium, supra, 436 F. 2d at 49. In this case, the substantial evidence supporting the Board's conclusion that West Coast violated section 8(a)(3) is: (1) the timing of the discharges, when no immediate decrease in work actually occurred; (2) the coincidence of the discharges with the other section 8 violation discussed below; and (3) West Coast's anti-union animus, shown by the president's statements concerning employees who were active in the organizing campaign. See Ayer Lar Sanitarium, supra, 436 F.2d at 50; Santa Fe Drilling Co., supra, 416 F.2d at 731.

The Board also found that West Coast, through Mrs. Selvin, its bargaining agent, refused to bargain in good faith with union representatives in violation of section 8(a)(5) of the Act. The unions were certified as the joint bargaining agents for West Coast's employees on June 24, 1969. Numerous unsuccessful attempts were made to reach agreement during the next five months. Mrs. Selvin cancelled many of the scheduled meetings and, on many occasions she refused to return phone calls from union representatives. She did not

provide counter-proposals to the contract proposed by the union until October 16th, though she had promised to provide them by July 22nd. When the union representative informed West Coast's president of the lack of progress, the president stated that he would leave these matters to Mrs. Selvin.

Although we do not agree with the Board's contention that Mrs. Selvin's objections to the mutual respect clause of the contract proposed by the unions shows a refusal to bargain in good faith, we find that there is substantial evidence supporting the Board's conclusion that West Coast violated section 8(a)(5). There is no duty to reach an agreement, but there is a duty to negotiate with a spirit of sincerity and cooperation. *See* N.L.R.B. v. Industrial Wire Products Corp., 455 F.2d 673, 677 (9th Cir. 1972); N.L.R.B. v. Stanislaus Implement & Hardware Co., Ltd., 226 F.2d 377, 380 (9th Cir. 1955). West Coast's acts, discussed above, show a lack of this "spirit" and, therefore, a violation of section 8(a)(5).

The final unfair labor practice found by the Board was a violation of section 8(a)(1). When the employees went on strike on September 15, 1969, Mrs. Selvin told West Coast that it would be reasonable to send a warning telegram to employees who did not report for work. At the hearing before the trial examiner, the general counsel produced a document stating that the company had the right to fill the position of any employee who had participated in the strike, and that an employee whose position was filled would lose all interest in his or her former employment. However, no substantial evidence was introduced to support the Board's conclusion that this telegram was sent by West Coast and received by any employees. Therefore, we agree with West Coast that the Board has failed to show substantial evidence

supporting its conclusion that there was a section 8(a)(1) violation.

We will grant enforcement of the Board's order except as to that part dealing with the section 8(a)(1) charge.