[Civ. No. 41039. Second Dist., Div. Three. May 27, 1975.]

SANTIAGO ESCAMILLA et al., Plaintiffs and Appellants, v.
MARSHBURN BROTHERS, Defendant and Respondent.

474

**COUNSEL**

William D. Farber, Philip J. Jimenez, Robert Johnstone, Howard S. Scher, Burton D. Fretz, Alfonso J. Gonzalez and Cynthia Mertens for Plaintiffs and Appellants.

Haight, Lyon, Smith & Dickson and William M. Fitzhugh for Defendant and Respondent.

**OPINION**

**ALLPORT, Acting P. J.**—Santiago, Maria, and Rosa Escamilla plaintiffs, appeal from "the order rendered May 23, 1972 in favor of

Marshburn Brothers, defendants, denying plaintiffs' motion for a new trial on the issue of jury instructions, and from each of them." Pursuant to order of the Supreme Court dated January 23, 1975, on February 6, 1975, we made an order permitting plaintiffs to augment the record on appeal to include such further and additional trial court record which they deem necessary or desirable to insure a full consideration of the appeal. This court having been advised that no augmentation of the record is desired, now undertakes to determine the appeal on its merits as further directed by the Supreme Court's order referred to above.

### Status of the Case

In an amended complaint plaintiffs seek compensatory and punitive damages and certain specified injunctive relief against Marshburn Farms and its foreman Guadalupe Vargas. It is alleged that Santiago, Maria and Rosa Escamilla were field laborers employed by Marshburn Farms assigned to do harvest work in certain turnip fields owned by Marshburn in San Luis Obispo County. Vargas was an agent of Marshburn acting within the course and scope of the agency. It is further alleged that Vargas improperly discharged the Escamillas in May of 1970 in violation of Labor Code sections 922 and 923.[1] Trial by jury was had on the issues of wrongful discharge and damages. The issue of injunctive relief was reserved for decision by the court. The jury returned a verdict in favor of defendants and plaintiffs contend on appeal that instructional error resulted in the adverse verdict and compels reversal of the judgment entered on the verdict. A pretrial order established the basic facts of the employment leaving the question of the propriety of the termination of that relationship to the jury as the trier of fact. Since no claim is made

---

[1]Section 922 provides: "Any person or agent or officer thereof who coerces or compels any person to enter into an agreement, written or verbal, not to join or become a member of any labor organization, as a condition of securing employment or continuing in the employment of any such person is guilty of a misdemeanor."

Section 923 provides: "In the interpretation and application of this chapter, the public policy of this State is declared as follows:

"Negotiation of terms and conditions of labor should result from voluntary agreement between employer and employees. Governmental authority has permitted and encouraged employers to organize in the corporate and other forms of capital control. In dealing with such employers, the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment. Therefore it is necessary that the individual workman have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."

that the evidence is insufficient to support the judgment, the record may be summarized by saying that there was little evidence which would support findings that the employment was terminated solely by Vargas because of Santiago Escamilla's union membership activity.[2] The evidence and inferences to be drawn therefrom were highly conflicting and compelling of the conclusion that intemperance and misunderstanding on the part of both Vargas and the Escamillas played a major role in the disruption of the employment relationship. This is emphasized by the following excerpts from the testimony of the two principals, Vargas:

"Q. Will you state whether or not you fired Santiago Escamilla because he was a member of a union?

MR. WOOLPERT: I am going to object to that on the grounds it is leading and suggestive.

THE COURT: Overruled.

THE WITNESS: I swear that I didn't.

BY MR. FITZHUGH: Q. Why did you fire Santiago Escamilla?

A. Because he told me very bad, he treat me very badly and at that time, he humiliate me in front of the crew.

Q. Why did you offer the Escamillas their job back?

A. I don't understand ery well, repeat it, please, or I would like to know if it is after or before.

Q. Well, after you fired him, you told him to keep on loading; is that right?

A. Yes.

Q. And you told him to keep on working; is that correct? You told him he could keep on working; is that correct?

---

[2]It should be noted that there is no evidence in the record before us that any Marshburn representatives other than Vargas made anti-union statements *prior* to the firing. The evidence as to the employer's anti-union activity is limited to the testimony of S. Escamilla to the effect that Vargas once indicated the workers should prefer the packers' union to that of the Chavez union.

A. Yes, because they were the first ones in the crew of all those years."

and Escamilla:

"By Mr. Farber: Q. After Mr. Vargas spoke with Mr. Melvin Marshburn, what is the conversation that Mr. Vargas had with you, Mr. Escamilla?

A. The conversation he had with me after Abel interpret for me. He didn't have any conversation, he only yell at me not too loud. He said, 'Santiago, you can continue working today and it all depends how you behave. You could continue work.' . . .

By Mr. Farber: Q. Mr. Escamilla, will you tell us your whole understanding of what Mr. Vargas meant when he said, 'If you behave'?

A. Yes.

Mr. Fitzhugh: Can I just have my objection noted for the record, please?

The Court: It is noted.

The Witness: What I understood is when he told me in front of the public, in other words, the workers, is very oppressive, humiliation and I had to quit asking for cups, that we had to keep drinking water from a faucet, dirty faucet, everybody from the same one; not to ask for toilets, that sometimes a woman was inside and by mistake, we opened the door or vice versa.

Mr. Fitzhugh: If Your Honor please, this is ridiculous, I object.

The Court: You have objected; I have ruled on it. You may complete your answer.

The Witness: Quit the union, resign to the rights of organization ourselves so they could continue with arbitrary things and at the same time against the State laws that the State give us so we can defend ourselves. Well, I can't say anything else, there is many things but I cannot say them. I don't want to make it more extensive because I am tired of this thing."

We reiterate, however, that in the absence of prejudicial instructional error the judgment on the verdict as rendered must be affirmed.

## Contentions

Plaintiffs first contend that the trial court erroneously instructed the jury with respect to the applicable test for retaliatory firing in a civil action brought under Labor Code sections 922 and 923. In support of this contention it is argued that in such an action it need not be proved that the firing was motivated solely by union membership and that the primary motive test adopted by the trial court is at variance with the applicable standard for retaliatory firing. As a corollary it is suggested that the error was compounded by the failure of the court to recognize the proper standard in directing the jury to return a verdict for defendants if certain business reasons caused the termination of the employment and in failing to give six of plaintiffs' requested instructions bearing the caption "Evidence of Retaliatory Motive."

## The Instructions

Labor Code sections 922 and 923, *supra,* were read verbatim to the jury. The jury was also advised that plaintiffs' employment was terminable at will by either the employer or the employee and that sections 922 and 923 allow employees, under contracts of employment terminable at will, to recover damages if "discharged by their employer primarily for their union membership. . . ." The termination of employment was to be deemed actionable "if union membership was primarily the reason for the firing." The burden was placed upon plaintiffs to establish a "violation of California Labor Code, sections 922 and 923; that is, the firing was primarily motivated because of Plaintiffs' union membership."

The jury was also directed to return a verdict in favor of defendants if it found that "the reason Plaintiffs were fired was because one or more of the Plaintiffs were not properly performing their job" or "the reason Plaintiffs were fired was because one or more of the Plaintiffs insulted the Defendant, Vargas." We note also that the jury was advised that the case of each plaintiff "is separate from and independent of the others. The instructions govern the case as to each plaintiff so far as they are applicable to him, unless otherwise stated. You will determine each Plaintiff's case separately, the same as if you were trying different law

suits." In its general instructions the jury was told that, "The masculine form as used in these instructions, if applicable as shown by the text of the instruction and the evidence, applies to a female person. . ." and that "The words Plaintiff and Defendant, as used in these instructions, apply to each Plaintiff and to each Defendant, respectively, except as you may be otherwise instructed."

The following instructions requested by plaintiffs were refused:

## "PLAINTIFFS' INSTRUCTION # 8

### EVIDENCE OF RETALIATORY MOTIVE

"You are instructed that in retaliatory firings as in this case there is usually no direct link supplied exclusively by direct evidence of union activity and firing. Intent is subjective and in many cases the discrimination can be proved only by the use of circumstantial evidence. It is well known that a given fact may be proved indirectly as well as directly. If one can show that every other alternative except the fact sought to be proved is not true, you indirectly prove that fact. By excluding every other reasonably [*sic*] hypothesis that fact is left standing alone as proved."

## "PLAINTIFFS' INSTRUCTION # 9

### EVIDENCE OF RETALIATORY MOTIVE

You are instructed that if you find that other employees were not fired for engaging in the same or worse conduct as plaintiff, this is evidence that plaintiff was wrongfully terminated from employment."

## "PLAINTIFFS INSTRUCTION # 11

### EVIDENCE OF RETALIATORY MOTIVE

You are instructed that if you find an absence of reasonable explanations for the termination of plaintiff, this is evidence that plaintiff was wrongfully terminated from employment."

"PLAINTIFFS' INSTRUCTION # 12

EVIDENCE OF RETALIATORY MOTIVE

You are instructed that if you find an absence of prior reprimand or warning this is evidence that plaintiff was wrongfully terminated from employment."

"PLAINTIFFS' INSTRUCTION # 13

EVIDENCE OF RETALIATORY MOTIVE

You are instructed that if you find that there was an anti-union bias on the part of the defendant or any of his agents or employees, this is evidence of a retaliatory firing and a wrongful termination of employment."

"PLAINTIFFS' INSTRUCTION # 14

EVIDENCE OF RETALIATORY MOTIVE

You are instructed that if you find a refusal of the employer to explain on request the reason for the termination of employment, this is evidence that plaintiff was wrongfully terminated from employment."

## Discussion

In reviewing a claim of instructional error we are controlled by article VI section 13 of the California Constitution[3] and explained in *Marr v. Postal Union Life Ins. Co.,* 40 Cal.App.2d 673 at page 686 [105 P.2d 649], as follows: "Appellant next complains of the giving of certain instructions and the refusal to give others. It would unduly prolong this already lengthy opinion to set forth the challenged instructions given and the proffered instructions rejected. Suffice it to say that a reading of all instructions given satisfies us that the jury was adequately, correctly and fairly instructed upon all issues tendered by the pleadings or raised by the evidence. And we might add that under the facts of this case as

---

[3]Article VI section 13 (formerly § 4 1/2) of the California Constitution reads: "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

revealed by the evidence, even though it should be conceded that the giving or refusing of certain instructions was erroneous, nevertheless section 4½ of article VI of the Constitution and section 475 of the Code of Civil Procedure restrains us from reversing the judgment, because we would not be warranted in saying that a different verdict would probably have been rendered had such errors not occurred."

The thrust of Plaintiffs' first contention is clear, namely, that the instructions failed to establish legally sound guidelines from which the jury could determine whether or not the termination of employment was in violation of the law and public policy codified by the Legislature in sections 922 and 923. Recognizing this to be a case of first impression, it is nevertheless argued that a so-called primary motive test adopted by the trial court is at variance with the "applicable standard for retaliatory firing." In endeavoring to create a currently nonexistent applicable standard, plaintiffs cite *N.L.R.B.* v. *Ayer Lar Sanitarium* (9th Cir. 1970), 436 F.2d 45, in support of a test suggested by plaintiffs in their requested instruction number 7 which, prior to modification by the trial court, read as follows: "In determining whether the termination of employment was in retaliation for either union membership or because of an attempt to obtain rights guaranteed by the laws of California to all employees, the jury may find the termination wrongful if union membership was a substantial but not the only reason for the firing. Alternatively, the jury may find the termination wrongful if plaintiffs' effort to secure lawful rights regarding sanitary facilities was the substantial but not the only reason for the firing. Even though other motives for the firing may exist, that firing was still wrongful if it was substantially a response to either union membership or attempts to gain lawful rights." We construe this language to connote as suggested by plaintiffs a "substantial but not the only reason" test, as distinguished from the trial court's "primary motive" test contained in the instructions as modified and given. While we agree with the argument that plaintiffs, in an action for retaliatory firing, need not prove that the firing was motivated solely by union membership, we do not agree that the test adopted by the trial court can be tortured into a "sole" motive test and can be deemed erroneous for that reason. Furthermore, we fail to agree that by resort to the rationale of the federal N.L.R.B. decisions cited by plaintiffs, we can formulate a "substantial reason" test for use in this or other similar actions. California Labor Code section 923, which declares the public policy with respect to concerted activity by employees appears to have been taken directly from section 2 of the Norris-LaGuardia Act (29 U.S.C. § 102) which became in part section 7 of the Labor Management Relations Act.

Therefore, in deciding whether a discharge violates this section, we turn to the federal cases dealing with violation of section 8(a) (3) of the Labor Management Relations Act (29 U.S.C. § 158) for guidance.

The trial court, by its use of such phrases as "if union membership was primarily the reason for the firing," placed before the jury a dominant motive test. Such a test is expressly followed in one circuit, where it has been stated: "The Board has the burden of making a clear showing that the employer's dominant motive was not a proper business one, but union animus." (*N.L.R.B.* v. *Fibers International Corporation* (1st Cir. 1971) 439 F.2d 1311, 1312.) Other circuits apply a "but for—moving cause" test. This test is phrased in terms of "whether the business reason or the protected union activity is the moving cause behind the discharge. . . ." In other words, would this employee have been discharged but for his union activity? (*N.L.R.B.* v. *West Coast Casket Company, Inc.* (9th Cir. 1972) 469 F.2d 871, 874; *N.L.R.B.* v. *Ayer Lar Sanitarium, supra,* 436 F.2d at p. 50; *Southwest Latex Corporation* v. *N.L.R.B.* (5th Cir. 1970) 426 F.2d 50, 54-55.)

Many of the cases that apply the "but for—moving cause" test, talk in terms of the discharge being unlawful even if it is only "partially motivated" by the employee engaging in protected union activity. (Eg. *N.L.R.B.* v. *Big Three Industries, Inc.* (5th Cir. 1974) 497 F.2d 43, 49; *N.L.R.B.* v. *Winkel Motors, Inc.* (9th Cir. 1971) 443 F.2d 38, 40.) Regardless of the verbal standard enunciated, what the trier of fact is attempting to determine in each instance is which motivation actually triggered the discharge at issue. While the terminology differs, after reviewing the cases we are not prepared to say that the "but for—moving cause" test essentially differs in application from the "dominant motive" test, but if there is a difference we consider the "dominant motive" test as preferable. (See *N.L.R.B.* v. *Fibers International Corporation, supra,* 439 F.2d at p. 1315.)[4] *Ayer Lar,* 436 F.2d 45, *supra,* summarizes the matter as follows at page 50: "On the other hand, the cases are legion that the existence of a justifiable ground for discharge will not prevent such discharge from being an unfair labor practice if partially motivated by the employee's protected activity; a business reason cannot be used as a pretext for a discriminatory firing. E.g., N.L.R.B. v. Central Power &

---

[4]Some of the cases under section 8(a) (3) of the Labor Management Relations Act review the N.L.R.B. decisions in terms of whether there is substantial evidence to support the board's findings. (E.g. *N.L.R.B.* v. *Princeton Inn Company,* (3d Cir. 1970) 424 F.2d 264, 265; *N.L.R.B.* v. *Gladding Keystone Corporation,* (2d Cir. 1970) 435 F.2d 129, 131.) These cases are inapplicable to our inquiry.)

Light Company, 425 F.2d 1318, 1322 (5th Cir. 1970); Borek Motor Sales, Inc. v. N.L.R.B., 425 F.2d 677, 680-681 (7th Cir. 1970); N.L.R.B. v. Midtown Service Co., 425 F.2d 665, 670 (2d Cir. 1970); N.L.R.B. v. Princeton Inn Company, 424 F.2d 264, 265 (3d Cir. 1970); McGraw-Edison Company v. N.L.R.B., 419 F.2d 67, 76 (8th Cir. 1969); Hanes Hosiery, *supra,* 413 F.2d at 458. The test is whether the business reason or the protected union activity is the moving cause behind the discharge. N.L.R.B. v. Security Plating Company, 356 F.2d 725, 728 (9th Cir. 1966). *See also* Kellwood Company, Ottenheimer Bros. Mfg. Div. v. N.L.R.B., 411 F.2d 493, 498 (8th Cir. 1969). In other words, would this employee have been discharged *but for* his union activity? Southwest Latex Corporation v. N.L.R.B., 426 F.2d 50, 54-55 (5th Cir. 1970)."

The issue before us presupposes the existence of two causes for a firing, to wit, business reasons and union activity. It follows that to apply a "substantial but not the only reason" test is of no help to the jury. As pointed out in *Ayer Lar,* where two reasons for firing exist the trier of fact must look for "the moving cause." While a firing may be wrongful if motivated partially or substantially because of union membership activity, it is not necessarily actionable under sections 922 and 923. If the employee would not have been fired "but for" business reasons then the moving cause of the discharge was not union membership and hence not actionable. We deem the test adopted by the trial court to be an appropriate one. While perhaps, as in the case of many hastily conceived jury instructions, the instructions used are susceptible to abstract criticism and subject to clarification and refinement, as given they convey a rational and realistic·test not dissimilar to that used by the federal courts in construing unfair labor practices. The jury was in effect advised that plaintiffs had the burden of proving that the firing was actionable if it was *primarily motivated* because of union membership and wrongful if union membership was *primarily the reason* for the firing. As conceded by plaintiffs this may be termed a "primary motive" test. We do not consider the test used in the instant case to be at variance with the moving cause test of *Ayer Lar* nor in contravention of the public policy expressed in Labor Code section 923.

It remains for us to consider whether it was error to direct a verdict for defendants if the jury found that the firing was for business reasons as opposed to union membership. While the giving of formula instructions directing a verdict is generally frowned upon,[5] the giving of

[5]*Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists,* 227 Cal.App.2d 675, 719 [39 Cal.Rptr. 64]; *Taha* v. *Finegold,* 81 Cal.App.2d 536, 543 [184 P.2d 533].

instructions to that effect in the case at bench does not compel reversal. After being told that the jury "may find the termination wrongful if union membership was primarily *the reason* for the firing" (italics added), the jury was told in essence that if *the reason* was otherwise they should find for defendants. The addition of the word "primary" in these instructions was not necessary to a full understanding of their meaning nor did the failure to use the word again render the charge erroneous or confusing. The jury was previously advised of the applicable law and told not to single out any certain sentence or any individual point or instruction and ignore the others, but to consider all the instructions as a whole and to regard each in the light of all others. Under the circumstances the failure to repeat the word primary in these criticized instructions does not require reversal.

 ■  Next, it is argued that, by instructing that all three plaintiffs could lawfully be fired for alleged misconduct of only one, the court committed reversible error. The instructions, mentioned above in connection with the first contention, read in full as follows:

"If you find from a preponderance of the evidence that the reason Plaintiffs were fired was because one or more of the Plaintiffs were not properly performing their job, then I direct you to bring in a verdict in favor of the Defendants.

"If you find from a preponderance of the evidence that the reason Plaintiffs were fired was because one or more of the Plaintiffs insulted the Defendant, Vargas, then I direct you to bring in a verdict in favor of the Defendants."

We agree that these instructions standing alone and carefully analyzed permit of a finding that all three plaintiffs could properly be fired for business reasons applicable to but one. However, when considered in the light of the other instructions directing that the case of each plaintiff should be considered separately and independently of each other, we cannot say that the giving of the instructions complained of resulted in a miscarriage of justice. The instructions do not mention a firing because of union membership activities, which is the gravamen of the action. We have determined that the jury was properly instructed on the right to recover for wrongful firing in other instructions. These could well have been considered surplusage because, if the reason for the firing of one or all of the plaintiffs was for business reasons and not for union membership activity, then there could be no recovery in this action.

These instructions merely espoused an unnecessary truism. We note that there is no evidence in the record from which an inference can be drawn that Maria or Rosa Escamilla were themselves members of a union or that their firing was for anything other than Santiago's union membership activity or for business reasons applicable to all three. Under the instructions as given the jury was free to find in favor of one or all of the Escamillas if their firing resulted primarily from the union membership activity or in favor of defendants if the reason for the firing was business activity (incompetency or for insulting the foreman). Likewise the jury was free to find the facts applicable to each plaintiff separate from the others.

■ Finally it is argued that the refusal to give certain instructions offered by plaintiffs was reversible error. We do not agree. Plaintiffs' instruction number 8, as requested, presupposed the existence of a retaliatory motive for the firings in the instant case. That was the primary issue of fact for the jury to decide. To give the instruction in the form requested would have been error. The jury was properly instructed as to the evidence available to prove the issues. This instruction read as follows:

"Evidence may be either direct or circumstantial. It is direct evidence if it proves a fact, without an inference, and which in itself, if true, conclusively establishes that fact. It is circumstantial evidence if it proves a fact from which an inference of the existence of another fact may be drawn.

"An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts established by the evidence.

"The law makes no distinction between direct and circumstantial evidence as to the degree of proof required; each is accepted as a reasonable method of proof and each is respected for such convincing force as it may carry."

We are referred to no authority supporting the proposition that the failure to give the remainder of the requested instructions captioned "Evidence of Retaliatory Motive" was error, much less prejudicial error. The cases of *N.L.R.B.* v. *Melrose Processing Co.* (8th Cir. 1965) 351 F.2d 693, *Falcon Plastics-Division of B-D Lab., Inc.* v. *N.L.R.B.,* (9th Cir. 1968) 397 F.2d 965, *N.L.R.B.* v. *Swain and Morris Construction Co.,* (9th Cir. 1970) 431 F.2d 861, *N.L.R.B.* v. *Sellers,* (9th Cir. 1965) 346 F.2d 625,

are factually distinguishable nonjury federal decisions, neither compelling nor persuasive of our holding that the failure to give these instructions requires reversal.

Having concluded that the jury was properly and adequately instructed on the applicable law and that any existing errors, inconsistencies or surplusage in the instructions did not result in a miscarriage of justice, the judgment must be affirmed.

The judgment is affirmed.

Cobey, J., and Potter, J., concurred.