[Civ. No. 57920. Second Dist., Div. One. Oct. 29, 1980.]

LAWRENCE M. CLEARY, Plaintiff and Appellant, v.
AMERICAN AIRLINES, INC., et al., Defendants and Respondents.

COUNSEL

Rudolph Pacht for Plaintiff and Appellant.

Overton, Lyman & Prince, George Christensen and Mark H. Van Brussel for Defendants and Respondents.

OPINION

JEFFERSON (Bernard), Acting P. J.*—By a fifth amended complaint, plaintiff Lawrence M. Cleary sought both compensatory and punitive damages from his former employer, defendant American Airlines, Inc. One cause of action was for a breach of an oral contract—the wrongful discharge from employment. He also charged both his employer and certain named employees of the airline[1] with the torts of wrongful interference with business relationship and wrongful inducement of breach of contract. Defendants demurred to this fifth amended complaint. The trial court sustained the demurrers without leave to amend and entered a judgment of dismissal pursuant to Code of Civil Procedure section 581, subdivision 3. Plaintiff has taken a timely appeal from the judgment.

At issue on this appeal are the circumstances, if any, under which a long-term employee such as plaintiff, hired pursuant to an oral contract of employment for an unspecified term, may recover damages from his employer on a theory of wrongful discharge. We are also required to consider whether there is any liability on the part of certain of plaintiff's fellow employees for their conduct as participants in the events which led to plaintiff's termination.

We begin by taking notice of the fact that, recently, in *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

[1]Employees named as defendants were Mills, Fust, Armstrong, Griffard, Pike, Coffman, Anthony Adivari, Judi Adivari, Farino, Unangst, Mallone and Calhoun.

P.2d 1330], our high court clarified some aspects of the rule that a wrongful discharge of an employee constitutes a recognized cause of action. ■ In addition, we point out preliminarily that the instant appeal is governed by the rule that "[b]ecause this appeal arises from a judgment entered after the sustaining of a general demurrer, we must, under established principles, assume the truth of all properly pleaded material allegations of the complaint in evaluating the validity of the trial court's action." (*Tameny, supra*, 27 Cal.3d 167, 170.)

As indicated previously, two causes of action are set forth in the fifth amended complaint. The first cause is directed against plaintiff's former employer, defendant American Airlines, seeking compensatory damages for breach of contract. Plaintiff alleges that he entered into an oral contract with defendant employer on December 8, 1958, pursuant to which he became a permanent employee of the airline. The terms of employment, it is alleged, included defendant employer's regulation 135-4,[2] which expressed the employer's policy and procedure with respect to employee grievances and discharge. Plaintiff further alleges, in the context of the contract cause of action, a breach of an implied-in-law covenant of good faith and fair dealing by the employer—a covenant contained in the contract which insures that neither contracting party will do anything which would injure the right of the other to receive the benefits of the contract. It is alleged that from 1958 to 1976, an 18-year period, plaintiff worked for defendant employer as a payroll clerk, a ramp agent, and, from 1961 forward, as an airport operations agent.

Plaintiff alleges that the contractual breach occurred on December 23, 1976, through American Airlines "wrongfully and without just cause suspending plaintiff" from his employment, and, "without fair, complete or honest investigation charging plaintiff falsely and without just cause, with theft, leaving his work area...without authorization and threatening a fellow employee with bodily harm, all in violation of [American Airline's] Regulations." Plaintiff further sets forth in his pleading that he was terminated by American Airlines "wrongfully and without just cause" on December 30, 1976, for "allegedly committing said violations of said Regulations but actually for plaintiff's union organizing activities"; and that "[t]hereafter defendant American Airlines failed to afford plaintiff, as required by said Regulations, a fair, impartial and objective hearing of his protest of said suspension and dis-

---

[2]The regulation was not, although it should have been, in the interest of good pleading, attached to the complaint as an exhibit.

charge, a fair, impartial and objective determination of his appeal and a fair, impartial and objective review by a Review Board of the decision of the Hearing Officer on plaintiff's said protest of said suspension and discharge."

It is alleged by plaintiff that, at the time of his termination, his salary was $22,000 per year, and that he had acquired, pursuant to the employment contract, certain retirement and pension benefits, and the right to continue to earn such benefits to age 65, the right to borrow from, save in and receive dividends from the credit union, to enjoy seniority status and certain other unspecified rights. It is further pleaded that plaintiff has attempted, without success, to find other employment in the airline industry since his discharge by American Airlines.

The second cause of action sounds in tort, alleging a wrongful interference with business relationship and a wrongful inducement to breach the employment contract. Along with American Airlines, certain employees of American Airlines are named defendants. These employees and American Airlines, according to plaintiff, engaged in a conspiracy to cause his discharge. Plaintiff here seeks not only compensatory damages but punitive damages as well.

I

*The Common Law Rule With Respect to*
*Employment Contracts for an*
*Unspecified Term*

In California, the long-established common law rule applicable to employment contracts for an unspecified term is embodied in Labor Code section 2922, which provides: "An employment, having no specified term, may be terminated at the will of either party on notice to the other. Employment for a specified term means an employment for a period greater than one month." (As amended by Stats. 1971, ch. 1580, § 1, p. 3186; Stats. 1971, ch. 1607, § 2, p. 3459.)

The absolute power conferred by Labor Code section 2922 on an employer to discharge the at-will employee without cause is founded on the contractual concept of mutuality of obligation. The reasoning is that, since an employee may terminate the employment relationship when he wishes to do so, the employer also is entitled to terminate the

relationship at his pleasure. However, when viewed in the context of present-day economic reality and the joint, reasonable expectations of employers and their employees, the "freedom" bestowed by the rule of law on the employee may indeed be fictional. As the case law interpreting Labor Code section 2922 demonstrates, the rule applied in its purest form easily leads to harsh results for the employee.[3]

A typical statement of the absolute principle is contained in the case of *Marin* v. *Jacuzzi* (1964) 224 Cal.App.2d 549, 553 [36 Cal.Rptr. 880], where the court declared that "[a] contract for permanent employment is interpreted as a contract for an indefinite period and in the absence of statutory provisions or public policy considerations [citations] is terminable at the will of either party [citation] for any reason whatsoever [citation]." *Marin* goes on to emphasize that "the presence of ill will or improper motive" does not affect the power of the employer to terminate. (See also 1 Witkin, Summary of Cal. Law (8th ed. 1973) § 196, pp. 789-790; *Ruinello* v. *Murray* (1951) 36 Cal.2d 687 [227 P.2d 251]; *Swaffield* v. *Universal Ecsco Corp.* (1969) 271 Cal.App.2d 147, 167 [76 Cal.Rptr. 680].) Defendants herein rely upon the numerous expressions of this principle found in California decisional law as justification for the dismissal of plaintiff's action by the trial court.

There are some qualifications attendant upon the common law rule, however. Witkin points out that "[a] contract for permanent employment' calls for the following distinction: (a) If it is supported by some *independent consideration,* it is not terminable at will; but (b) if the only consideration for the alleged agreement of permanent employment is the services to be rendered thereunder, the contract is terminable by either party at any time. [Citations.] If not terminable at will, it is construed as an agreement for employment for a reasonable period. Upon termination without cause, the employee may recover damages for what the court finds to be such a 'reasonable period.'" (1 Witkin, *supra*, § 197, pp. 790-791.) (Italics added.) But only a few California courts have utilized the "independent consideration" qualification as justification for imposing liability on an employer for wrongful discharge. The cases of *Ferreyra* v. *E. & J. Gallo Winery* (1964) 231 Cal. App.2d 426 [41 Cal.Rptr. 819] (with a dis. opn.) and *Becket* v. *Welton Becket & Associates* (1974) 39 Cal.App.3d 815 [114 Cal. Rptr. 531], serve as illustrations of reluctance despite unusually persuasive factual situations.

[3]See Note, *Implied Contract Rights to Job Security* (1974) 26 Stan. L. Rev. 335, for analysis and criticism of the common law rule.

■ A comprehensive updated statement of the common law rule may be found in *Patterson* v. *Philco Corp.* (1967) 252 Cal.App.2d 63, 65 [60 Cal.Rptr. 110]: "The mere fact that a contract is terminable at will does not give the employer the absolute right to terminate it in all cases. The employer may be subject to damages for terminating the contract at will when such termination would be a violation of (a) public policy [citation], (b) a statute [citations], or (c) when the employee was engaged contractually to serve so long as he performed to the satisfaction of the employer [citation]." In our view, the *Patterson* summary more accurately defines the present state of the law.

## II

### *Public Policy Considerations*

While, as defendants point out, our Legislature, despite opportunity, has not seen fit to amend Labor Code section 2922, some exceptions have been made to its application in particular cases where, for reasons of public policy—as perceived by the judiciary or the Legislature—such exceptions have been deemed to be warranted.

The major case, prior to *Tameny*, was *Petermann* v. *International Brotherhood of Teamsters* (1959) 174 Cal.App.2d 184 [344 P.2d 25]. In *Petermann*, the plaintiff employee sought damages for wrongful discharge from his employment, a discharge which occurred when he was asked to, and refused to, commit perjury on behalf of his employer. Despite the at-will employment, the court imposed liability on the employer, squarely relying on *public policy* to do so. Noting that perjury was a crime, the *Petermann* court defined public policy as ""*that principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good....*"" (*Id.* at p. 188.) (Italics in original.)

And, in *Glenn* v. *Clearman's Golden Cock Inn* (1961) 192 Cal.App. 2d 793, 796 [13 Cal.Rptr. 769], the absolute right to discharge an at-will employee was modified "to the extent that no employer may discharge an employee solely because of his membership or activity in a labor union."

In addition, the Legislature has, by various enactments—principally in the Labor Code, but also in other codes—limited the right of an

employer to discharge an employee at will. Protection from discharge has been provided in a range of situations: discharge cannot be justified when the employee refuses to perform work under unsafe conditions (see Lab. Code, § 6311, and *Mason* v. *Lyl Productions* (1968) 69 Cal. 2d 79 [69 Cal.Rptr. 769, 433 P.2d 193]); or when the employee asserts certain civil rights, including participation in elections and service as a juror[4] (Lab. Code, §§ 1101, 230; Elec. Code, § 1650); or when the employee's wages are garnished (Lab. Code, § 2929); or when the employee seeks to invoke the protection of minimum wage laws for women and minors (Lab. Code, § 1197; *Montalvo* v. *Zamora* (1970) 7 Cal.App.3d 69 [86 Cal.Rptr. 401]); or to prevent discrimination due to age (Lab. Code, §§ 1420.1 and 1420.15).

These inroads on the absolute right of an employer to terminate at-will employees compel the conclusion that, presently, in many different contexts, there are practical, legally recognized limitations on that right to discharge at-will employees.

### III

*A Survey of Some Recent Case Law With Respect to an Employer's Right to Discharge At-will Employees*

Three fairly recent cases illustrate the increasing reluctance of the courts to allow termination of employment relationships without imposition of liability when it is deemed appropriate.

*In Drzewiecki* v. *H & R Block, Inc.* (1972) 24 Cal.App.3d 695 [101 Cal.Rptr. 169], plaintiff was a branch manager for defendant employer pursuant to a written contract of employment which had been prepared by the employers' counsel and provided for termination only if the business, that of preparing income tax returns for a fee, was improperly conducted. After a number of successful years of operation under this arrangement, disputes arose between the parties which had no relationship to claims of improper management.

Upholding the plaintiff's right to damages upon wrongful termination, the court declared that "we are not aware of any California

---

[4]The right of an employee to serve as a juror without fear of discharge was enacted as part of the Labor Code after *Mallard* v. *Boring* (1960) 182 Cal.App.2d 390 [6 Cal.Rptr. 171], where such a discharge was upheld by application of the absolute rule.

decision which holds, squarely, that a contract for permanent type employment is terminable at the will of the employer if the employer has, by express language or clear implication, foreclosed his right to terminate except for cause." (*Id.* at p. 703.)

No "independent consideration" supported the contract in *Drzewiecki*, but that fact did not deter the court. It stated that "[i]t is fundamental that when construing contracts involving substantial employment rights, courts should avoid mechanical and arbitrary tests if at all possible; employment contracts, like other agreements, should be construed to give effect to the intention of the parties as demonstrated by the language used, the purpose to be accomplished and the circumstances under which the agreement was made. [Citations.] [¶] We embrace the prevailing viewpoint that the general rule [requiring independent consideration] is a rule of construction, not of substance, and that a contract for permanent employment, whether or not it is based upon some consideration other than the employee's services, cannot be terminated at the will of the employer if it contains an express or implied condition to the contrary." (*Id.* at pp. 703-704.)

In *Rabago-Alvarez v. Dart Industries, Inc.* (1976) 55 Cal.App.3d 91 [127 Cal.Rptr. 222], plaintiff, employed for 16 years pursuant to an orally stated understanding that her employment was permanent as long as her performance was satisfactory, was discharged, it was claimed, without good cause. An award of damages was upheld. It was explained: "It is settled that contracts of employment in California are terminable only for good cause if either of two conditions exist: (1) the contract was supported by consideration independent of the services to be performed by the employee for his prospective employer; or (2) the parties agreed, expressedly or impliedly, that the employee could be terminated only for good cause." (*Id.* at p. 96.) Such an implication was found in that matter.

A third case—*Hepp v. Lockheed-California Co.* (1978) 86 Cal.App.3d 714 [150 Cal.Rptr. 408]—was an appeal from a summary judgment for the employer. The suit was occasioned by the employer's claimed failure to follow its own expressed policy with respect to rehiring employees laid off when recession hit the aerospace industry. Plaintiff was complaining that others had been rehired instead of plaintiff, at a time when he was entitled to be rehired pursuant to the employer's policy. The summary judgment favoring the employer was reversed; the em-

ployer's argument that justified his conduct on the basis of Labor Code section 2922 was rejected by the court, which found certain triable issues of fact.

## IV

### *Good Faith and Fair Dealing*

Plaintiff herein has pleaded that the implied-in-law covenant of good faith and fair dealing was contained in his employment contract. The concept of good faith and fair dealing was first formulated by the California courts in insurance contracts. But it is clear that it has reference to *all* contracts. ■ The doctrine was explained in *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658 [328 P.2d 198], by the following observation: "There is an implied covenant of good faith and fair dealing in *every* contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." (Italics added.)

The duty which arises from the covenant of good faith and fair dealing is *unconditional* and *independent* in nature; it is not controlled by events in the same manner as conditions precedent or subsequent. (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 578 [108 Cal.Rptr. 480, 510 P.2d 1032].) The only hint in California case law that, on occasion, it may be incumbent upon an employer to demonstrate *good faith* in terminating an employee, was expressed in the early case of *Coats* v. *General Motors Corp.* (1934) 3 Cal.App.2d 340, 348 [39 P.2d 838], in these terms: "It is equally well settled that the employer must act in good faith; and where there is evidence tending to show that the discharge was due to reasons other than dissatisfaction with the services the question is one for the jury."[5] (See also *Zimmer* v. *Wells Management Corporation* (S.D.N.Y. 1972) 348 F.Supp. 540), utilizing the concept of good faith and fair dealing in an employment contract dispute.)

## V

### *The Tameny Case*

In *Tameny, supra,* 27 Cal.3d 167—a recent decision by our high court—the considerable inroads which have been made upon the abso-

---

[5]The burden of proof for establishing some hidden motive for discharge rests upon the discharged employee. (*Escamilla* v. *Marshburn Brothers* (1975) 48 Cal.App.3d 472 [121 Cal.Rptr. 891].)

lute freedom of an employer to discharge the at-will employee were noted by the court. It was observed that "the employer is not so absolute a sovereign of the job that there are not limits to his prerogative. One such limit at least is the present case." (*Id.* at p. 178.)

In the *Tameny* case, plaintiff Tameny sought damages for wrongful discharge by his employer of 15 years, a discharge resulting from plaintiff's refusal to participate in an illegal scheme to fix retail gasoline prices. Plaintiff alleged five causes of action: three sounding in tort, one in contract, and one pursuant to the Cartwright Act. Defendant employer took the position that it was only answerable to plaintiff, if at all, for breach of contract. The trial court had agreed with defendant that plaintiff could not state a cause of action in tort for wrongful discharge, although the cause of action sounding in contract was allowed to stand. Plaintiff dismissed the contract count, and appealed the trial court's ruling on the tort causes of action.

The California Supreme Court held that an "employer cannot condition employment upon required participation in unlawful conduct by the employee." (*Id.* at p. 178.) The *Tameny* court recognized the "public policy" exception to the rule of Labor Code section 2922 first expressed in the *Petermann* decision, *supra.* The court declared that an employee's action for wrongful discharge is founded in tort as well as in contract, and that the employer may be subject to liability for both compensatory and punitive damages. In a footnote (*Tameny, supra*, 27 Cal.3d 167, 179, fn. 12), it was noted that it was unnecessary—on the *Tameny* facts—to determine whether a wrongfully discharged employee could also state a cause of action in tort for breach of the implied-in-law covenant of good faith and fair dealing although there was substantial authority supporting such a cause of action.

## VI

### *The Pleading Before Us*

█ In plaintiff's cause of action based upon contract, there is a rather general reference to plaintiff's union activities as the employer's real motive for discharge. Defendants strongly disputed this allegation, and, in fact, made a motion to strike that portion of the plaintiff's complaint on the ground that it constituted sham pleading. This motion was not disposed of on the merits, due to the trial court's ruling dismissing the litigation for failure to state a cause of action. When this matter is re-

turned to the trial court, there will be again an opportunity to resolve this issue. If the pleading has been truthful (a proposition we are compelled to accept here), plaintiff has pleaded one of the recognized public policy exceptions to the rule of Labor Code section 2922 and thus has stated a cause of action sounding both in contract and in tort. (See *Tameny, supra*.) But even if the trial court grants the motion to strike the allegation concerning plaintiff's union activities as the motivation for his assertedly wrongful discharge, plaintiff, nevertheless, is still entitled to his day in court.

We have indicated herein the continuing trend toward recognition by the courts and the Legislature of certain implied contract rights to job security, necessary to ensure social stability in our society. As was concluded by a commentator in 26 Stan. L. Rev. at page 369 (see fn. 3), "[t]he existence of separate consideration, the common law of the job, and rights accruing through longevity are all factors for courts to consider in evaluating whether an implied contractual right to job security exists. The conflict between an employee's right to job security and an employer's right to fire for cause or with economic justification should be resolved by judicial balancing of the competing equities."

Two factors are of paramount importance in reaching our result that plaintiff has pleaded a viable cause of action. One is the longevity of service by plaintiff—18 years of apparently satisfactory performance. Termination of employment without legal cause after such a period of time offends the implied-in-law covenant of good faith and fair dealing contained in all contracts, including employment contracts. As a result of this covenant, a duty arose on the part of the employer, American Airlines, to do nothing which would deprive plaintiff, the employee, of the benefits of the employment bargain—benefits described in the complaint as having accrued during plaintiff's 18 years of employment.

The second factor of considerable significance is the expressed policy of the employer (probably in response to the demands of employees who were union members), set forth in regulation 135-4. This policy involves the adoption of specific procedures for adjudicating employee disputes such as this one. While the contents of the regulation are not before us, its existence compels the conclusion that this employer had recognized its responsibility to engage in good faith and fair dealing rather than in arbitrary conduct with respect to *all* of its employees.

In the case at bench, we hold that the longevity of the employee's service, together with the expressed policy of the employer, operate as a form of estoppel, precluding any discharge of such an employee by the employer without good cause. We recognize, of course, that plaintiff has the burden of proving that he was terminated unjustly, and that the employer, American Airlines, will have its opportunity to demonstrate that it did in fact exercise good faith and fair dealing with respect to plaintiff. Should plaintiff sustain his burden of proof, he will have established a cause of action for wrongful discharge that sounds in both contract and in tort. He will then be entitled to an award of compensatory damages, and, in addition, punitive damages if his proof complies with the requirements for the latter type of damages. (See *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809 [157 Cal.Rptr. 482, 598 P.2d 452].)

■ As to the cause of action directed toward the plaintiff's fellow employees, the law is clear that they may not be held accountable for the employer's breach of the implied-in-law covenant of good faith and fair dealing. In *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 581 [108 Cal.Rptr. 480, 510 P.2d 1032], our state's high court recognized a plaintiff's cause of action in tort for breach of the implied-in-law covenant against certain insurance company defendants. However, the same court concluded that certain other named defendants, although alleged to be agents of the insurers, were not parties to the contract, and, hence, "were not subject to the implied duty arising from the contractual relationship." Thus, no cause of action had been stated as to them. *Gruenberg* was cited as the controlling authority in the *Egan* case, *supra*, where certain employees of Mutual of Omaha were sued along with the insurance company employer. Again, these employees were viewed as "not parties to the insurance contract and not subject to the implied covenant. . . ." (*Egan, supra*, 24 Cal.3d 809, 824.) So it is in the case at bench.

■ However, plaintiff has also alleged that, in the course of the claimed conspiracy between his fellow employees and his employer, certain well established torts were committed by them during the course of the conspiracy, namely, wrongful interference with business relationship, and wrongful inducement of breach of contract. Both torts are actionable, pursuant to California law (see, generally, 4 Witkin, Summary of Cal. Law (8th ed. 1974) § 384, p. 2636; § 392, p. 2643) against both plaintiff's fellow-employee defendants and his employer,

American Airlines. (*Wise* v. *Southern Pacific Co.* (1963) 223 Cal.App. 2d 50 [35 Cal.Rptr. 652]; *Mayes* v. *Sturdy Northern Sales, Inc.* (1979) 91 Cal.App.3d 69 [154 Cal.Rptr. 43].)

Since we return this matter to the trial court for further proceedings, plaintiff's fellow employees—named herein as defendants—will have their opportunity to plead such affirmative defenses as are available to them, including a defense of privilege based upon nonmalicious participation in events in which the employer was the prime movant, if such was in fact the case. (See *Mayes, supra.*)

The judgment is reversed.

Lillie, J., and Dunn (G. W.), J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.