Remanded for further proceedings consistent with this opinion.

# NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

# LOCAL UNION NO. 3, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Respondent.

### No. 997, Docket 87–4005.

United States Court of Appeals, Second Circuit.

Argued April 8, 1987.

Decided Sept. 11, 1987.

Norman Rothfeld, New York City, for respondent.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C. (Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, N.L.R.B., Washington, D.C., of counsel), for petitioner.

Joseph D. Luksch, New York City (Epstein Becker Borsody & Green, P.C., of counsel), filed a brief for intervenor Burroughs Corp.

Before LUMBARD, OAKES and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

The basic question on this appeal is whether a threat to strike is an unfair labor practice that the NLRB may enjoin under § 160(a) of the National Labor Relations Act. It was Congress' aim in that Act to stabilize labor relations. A union statement that contains an implied threat of reprisal against an employer is coercive in the same sense as is a strike itself because one party to a bargained-for agreement's use of a power it agreed not to use during the term of the contract destabilizes labor relations.

In the instant case the National Labor Relations Board (Board) petitions us to enforce an order issued September 30, 1986 against Local Union No. 3, International Brotherhood of Electrical Workers, AFL–CIO (Union or Respondent), reported at 281 N.L.R.B. No. 147. The Board ordered the Union to cease and desist from threatening to strike Burroughs Corporation (Burroughs) and to post notices stating, in effect, that it would not threaten to strike Burroughs when an object of such a strike was to force Burroughs to terminate the collective bargaining agreement, unless the Union complies with § 8(d) of the National Labor Relations Act, 29 U.S.C. § 158(d) (1982).[1] We grant the petition.

---

1. Section 8(d) provides that:
   the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification—
   (1) serves a written notice upon the other party to the contract of the proposed termi-

## FACTS

Burroughs was a corporation engaged in the manufacture and sale of computers. Since 1974, in a series of two-year agreements, the Union represented Burroughs' field engineers who serviced Burroughs equipment in New York and New Jersey. The agreement at issue expired on November 1, 1985, subject to an automatic one-year renewal clause. The clause provided that:

> This agreement shall remain in full force and effect up to and including November 1, 1985, and thereafter from year to year except as herein after [sic] provided.
>
> Sixty (60) days prior to November 1, 1985 or any subsequent annual expiration date either party may notify the other party in writing of its desire to negotiate a new agreement.

Thus, the Union would have had to notify Burroughs by September 2, 1985 of its intention to terminate the collective bargaining agreement on November 1.

On September 23, 1985—three weeks late—the Union sent Burroughs a termination notice. At an October 10 meeting between Union representative John Crowley and two Burroughs representatives, Crowley stated that he believed the Union's late notice had extended the termination date to November 25, 1985 and that the Union could strike then. When Burroughs representative James Fitzgerald told Crowley that striking employees would be subject to discipline and possible discharge, Crowley allegedly responded, "Just try it." Two days later, the Union employees met and voted to authorize its negotiation committee to call a strike.

In anticipation of the strike, Burroughs hired New York counsel, Joseph Luksch.

According to Luksch's testimony, he told the Union's counsel, Norman Rothfeld, in a telephone conversation that a strike would be a "classic" violation of § 8(b)(3) of the National Labor Relations Act. 29 U.S.C. § 158(b)(3) (1982) (providing that it is an unfair labor practice for a union representing employees to refuse to bargain collectively with an employer). Rothfeld responded, "So be it." On November 22 the Union and Burroughs met with a federal mediator to discuss the Union's contract proposals. The parties agreed to negotiate without waiving their legal positions as to the effectiveness of the September 23 notice of termination. Burroughs representative Fitzgerald testified that he asked Crowley whether the strike had been scheduled for Sunday or Monday and that Crowley told him, "it would have taken place Tuesday." The ALJ credited Fitzgerald's assertion over Crowley's denial.

Based on this testimony, the ALJ made the following findings of fact and law: (1) the Union failed to give timely notice of its intent to terminate the agreement; (2) the negotiations commencing on November 22 did not constitute a waiver of Burroughs' objection to the Union's belated notice; (3) Crowley's statements at the October 10 meeting, attorney Rothfeld's statements to attorney Luksch on October 25, and Crowley's statements before the mediator on November 22 constituted Union threats to strike; and (4) the Union's threat to strike was an unfair labor practice in violation of § 8(b)(3). The ALJ ordered the Union to cease and desist from "striking or threatening to strike" and to post notices to that effect. In affirming this order the Board amended it by deleting the word "striking," leaving only the threatening to strike lan-

---

nation or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification;

. . . .

(4) continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later:

... Any employee who engages in a strike within [the sixty-day period] specified in this subsection ... shall lose his status as an employee of the employer engaged in the particular labor dispute, for the purposes of sections 158, 159, and 160 of this title, but such loss of status for such employee shall terminate if and when he is reemployed by such employer.

29 U.S.C. § 158(d) (1982).

guage. Shortly before the Board issued its order, Burroughs merged into Unisys Corporation (Unisys) and Unisys took over all of Burroughs' operations.

## DISCUSSION

### I  *Mootness*

The Union first contends that the order may not be enforced because it is moot as a result of Burroughs' merger into Unisys. Respondent reasons that Burroughs has ceased to exist and that Unisys has not petitioned the Board to have its name substituted for Burroughs'.

■ A corporate merger does not affect our jurisdiction to consider the merits of the Board's order and to determine whether or not to enforce it. *Southport Petroleum Co. v. NLRB*, 315 U.S. 100, 106, 62 S.Ct. 452, 455, 86 L.Ed. 718 (1942). Other circuits reviewing Board orders have usually left questions regarding changes in corporate names or ownership that might excuse compliance with an order to be pursued in contempt proceedings before the courts or in compliance proceedings before the Board. *NLRB v. Family Heritage Home-Beaver Dam, Inc.*, 491 F.2d 347, 351 (7th Cir.1974); *NLRB v. West Coast Casket Co.*, 469 F.2d 871, 873 (9th Cir.1972); *NLRB v. Autotronics, Inc.* 434 F.2d 651, 652 (8th Cir.1970) (per curiam); *Cap Santa Vue, Inc. v. NLRB*, 424 F.2d 883, 886 (D.C. Cir.1970); *cf. NLRB v. Great W. Coca-Cola Bottling Co.*, 740 F.2d 398, 406 (5th Cir.1984) (merger of two unions). Hence, enforcement may not be denied on the grounds of mootness.

### II  *Norris-LaGuardia Act*

The Union's second argument opposing enforcement rests on two propositions: first, courts cannot enforce an order enjoining threats to strike if they could not enjoin the strike itself; and, second, the Norris-LaGuardia Act, 29 U.S.C. §§ 101–115 (1982), would prohibit enjoining a strike in the present circumstances. Even assuming the validity of the first proposition, the second must be rejected.

■ A union that strikes in repudiation of a collective bargaining agreement without having followed the notice provisions of § 8(d) of the National Labor Relations Act commits an unfair labor practice in violation of § 8(b)(3). *NLRB v. Lion Oil Co.*, 352 U.S. 282, 285, 77 S.Ct. 330, 332, 1 L.Ed.2d 331 (1957); *NLRB v. Truck Drivers Local Union No. 449*, 728 F.2d 80, 85 (2d Cir.1984); *IBEW Local No. 1186*, 264 N.L.R.B. 712, 720 (1982). The Board may enjoin an unfair labor practice under § 10(a) of the National Labor Relations Act, 29 U.S.C. § 160(a) (1982), and courts may enforce such an injunction unimpeded by the restrictions of the Norris-LaGuardia Act under § 10(h) of the National Labor Relations Act. 29 U.S.C. § 160(h) (1982) ("When ... entering a decree enforcing ... an order of the Board, ... the jurisdiction of courts sitting in equity shall not be limited by chapter 6 of this title [the Norris-LaGuardia Act]."); *see Sinclair Ref. Co. v. Atkinson*, 370 U.S. 195, 204, 82 S.Ct. 1328, 1333, 8 L.Ed.2d 440 (1962) (section 10(h) permits the Board to obtain injunctions despite the Norris-LaGuardia Act's anti-injunctive provision), *overruled on other grounds, Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

■ The legislative history of the Labor Management Relations Act of 1947, ch. 120, 61 Stat. 136 further undermines the Union's contention that § 10(h) does not apply to strikes constituting unfair labor practices. The Senate Report states that "the Board, acting in the public interest and not in vindication of purely private rights, may seek injunctive relief in the case of all types of unfair labor practices and that it shall also seek such relief in the case of strikes and boycotts defined as unfair labor practices." S.Rep. No. 105, 80th Cong., 1st Sess. 8 (1947); *see H.R. Conf.Rep. No. 510*, 80th Cong., 1st Sess. 57 (1947), U.S.Code Cong.Serv.1947, p. 1135. As a consequence, a strike that constitutes an unfair labor practice may be enjoined, and an unlawful threat to strike is therefore subject to an enforceable injunction.

### III  *First Amendment*

The final argument raised is that the First Amendment protects a threat to strike even if a strike would be illegal. Citing *Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.*, 391 U.S. 308, 313, 88 S.Ct. 1601, 1605, 20 L.Ed.2d 603 (1968), the Union argues that a threat to strike deserves more protection than picketing because the former is "pure speech", while the latter is part speech and part conduct.

Section 8(c) of the National Labor Relations Act provides that "[t]he expressing of any views, argument, or opinion, or the dissemination thereof ... shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression *contains no threat of reprisal or force or promise of benefit.*" 29 U.S.C. § 158(c) (1982) (emphasis added). The Supreme Court has noted that § 8(c) protects "non-coercive" speech "without extending its protection to speech ... in furtherance of unfair labor practices...." *IBEW v. NLRB*, 341 U.S. 694, 704–05, 71 S.Ct. 954, 959–60, 95 L.Ed. 1299 (1951); *see NLRB v. Gissel Packing Co.*, 395 U.S. 575, 617, 89 S.Ct. 1918, 1941, 23 L.Ed.2d 547 (1969) ("§ 8(c) merely implements the First Amendment."). Because the Union's threat to strike Burroughs to force it to renegotiate the collective bargaining agreements violates §§ 8(b)(3) and 8(d) and because a threat to strike is coercive like a strike itself, *General Serv. Employees Union Local No. 73 v. NLRB*, 578 F.2d 361, 369 (D.C.Cir.1978), the Union's threat is entitled to no special protection under the First Amendment. *Id.*

### CONCLUSION

Accordingly, the Board's petition for enforcement is granted.