944 F.2d 562
 60 USLW 2226
 John H. MEYER, Plaintiff-Appellant-Cross-Appellee,
v.
FIDELITY SAVINGS, et al., Defendants,
and
Federal Savings and Loan Insurance Corporation,
Defendant-Appellee-Cross-Appellant.
 Nos. 89-16695, 90-15025.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 5, 1991.
Decided Sept. 13, 1991.
 
 Gennaro A. Filice, III, and Catherine Douat-Murray, Hardin, Cook, Loper, Engel & Bergez, Oakland, Cal., for plaintiff-appellant-cross-appellee.
 Daniel Johnson, Jr., Robert L. Eisenbach, III, Cooley, Godward, Castro, Huddleson & Tatum, San Francisco, Cal., for defendants-appellee-cross-appellant.
 Appeal from the United States District Court for the Northern District of California.
 Before TANG, FARRIS and D.W. NELSON, Circuit Judges.
 D.W. NELSON, Circuit Judge:
 
 
 1
 With the enactment of the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-80, Congress partially punctured the immunity of the sovereign. At the same time, however, it limited the relief available against parties other than the government by making the United States the exclusive defendant in various situations. This case presents one of the numberless questions arising out of this interplay: whether a suit predicated on the tortious deprivation of fifth amendment due process, and therefore arguably beyond the reach of the FTCA, may nonetheless be brought against the Federal Savings & Loan Insurance Corporation ("FSLIC") pursuant to a "sue-and-be-sued" clause. We hold that it may.
 
 I.
 
 2
 In 1966, plaintiff John Meyer ("Meyer") joined Fidelity Savings & Loan ("Fidelity"), where he remained for the ensuing sixteen years. By 1982, at the time he was terminated, he had reached the position of executive vice-president. That same year, as a result of dubious loan policies, Fidelity began experiencing severe financial difficulties. They finally came to a head on April 13, 1983, when California's Savings and Loan Commissioner seized Fidelity's assets and appointed the FSLIC as state receiver. Because the FSLIC was later appointed the sole federal receiver by the Federal Home Loan Bank Board pursuant to 12 U.S.C. § 1729(c)(2), federal receivership replaced state receivership by operation of law.[1] Also on April 13, Robert Pattullo ("Pattullo") was named as the FSLIC's special representative to handle Fidelity's receivership. He promptly proceeded to terminate four employees. Among them was Meyer.
 
 
 3
 No reason was given Meyer for his termination, nor was he provided an opportunity either to hear the reasons why he should, or put forth the reasons why he should not, be terminated. In the same vein, he subsequently was denied the opportunity to appeal the decision or present evidence to challenge it.
 
 
 4
 Meyer's suit, filed against a number of defendants, grows out of these events. As of the time of trial, the sole remaining claim alleged that the FSLIC's and Pattullo's actions had deprived plaintiff of a property interest without due process of law, in violation of the Fifth Amendment.[2] The FSLIC's argument that it was protected by the doctrine of sovereign immunity having been rejected by the United States magistrate presiding over the trial,[3] the trial proceeded before a jury.
 
 
 5
 On September 19, 1989, the jury reached its decision pursuant to a special verdict. It found that Meyer had "a legitimate claim of entitlement to employment or a reasonable expectation of continued employment arising out of an implied contract with Fidelity;" that Meyer was "discharged ... by the FSLIC and/or Robert L. Pattullo;" that the FSLIC and/or Pattullo "failed to provide John Meyer with a hearing, the reasons for his discharge, and an opportunity to contest the reasons for his discharge before his termination;" that Pattullo was "acting within the scope of his employment at the time he terminated plaintiff;" and that Meyer was "damaged as a result of the discharge." Upon instruction challenged by appellant, and after the court had rejected appellant's request that it allow expert testimony on the state of the law at the time of Meyer's termination, the jury also found Pattullo to be "immune from liability under the doctrine of qualified immunity."
 
 
 6
 The FSLIC timely appealed, arguing that Meyer's claims against the federal agency were barred by sovereign immunity. In the alternative, it disputes the conclusion that Meyer was deprived of a protected property interest. Meyer then filed a cross-appeal on the issue of Pattullo's qualified immunity.[4]
 
 II.
 
 7
 The jurisdictional puzzle presented by this case consists of four principal pieces. First is the fundamental proposition that, "[a]bsent a waiver of sovereign immunity, the Federal Government is immune from suit." Loeffler v. Frank, 486 U.S. 549, 555, 108 S.Ct. 1965, 1969, 100 L.Ed.2d 549 (1987); see also United States v. Testan, 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976); LaBarge v. County of Mariposa, 798 F.2d 364, 366 (9th Cir.1986), cert. denied, 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 497 (1987).
 
 
 8
 Second comes Congress' express provision that the FSLIC may "sue and be sued, complain and defend, in any court of competent jurisdiction in the United States." 12 U.S.C. § 1725(c)(4) (repealed 1989); see also F.H.A. v. Burr, 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1939) (stating that "such waivers by Congress of governmental immunity in case of such federal instrumentalities should be liberally construed"). We consistently have held that this "sue and be sued" language constitutes a general waiver of sovereign immunity. Woodbridge Plaza v. Bank of Irvine, 815 F.2d 538, 542-43 (9th Cir.1987); Morrison-Knudsen Co., Inc. v. Chg Intern., Inc., 811 F.2d 1209, 1223 (9th Cir.) ("Unless Congress clearly directs otherwise, such 'sue and be sued' language waives an agency's sovereign immunity"), cert. dismissed, 488 U.S. 935, 109 S.Ct. 358, 102 L.Ed.2d 349 (1987).
 
 
 9
 The third item is the FTCA, 28 U.S.C. §§ 1346(b), 2671-2680. The FTCA waives the United States' sovereign immunity from tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674; see also Bush v. Eagle-Picher Indus., 927 F.2d 445, 447 (9th Cir.1991).[5]
 
 
 10
 The fourth and final piece of the puzzle is the FTCA provision that states:
 
 
 11
 The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title.
 
 
 12
 28 U.S.C. § 2679. Construing these four pieces together, our task can be expressed in the following question: Is a claim alleging deprivation of property without due process of law "cognizable" under the FTCA?
 
 
 13
 If the answer to this question is yes, the sue-and-be-sued clause has no effect on this case, see 28 U.S.C. § 2679(a), and Meyer's suit must be dismissed. Where the FTCA governs, its remedy is exclusive and a government agency may not be sued in its own name. See Loeffler, 486 U.S. at 549, 108 S.Ct. at 1966. The issue, then, simply becomes whether the FTCA waives the United States' sovereign immunity for the particular tort at stake and whether the plaintiff has duly complied with the Act's requirements. Meyer's suit alleges a constitutional tort, which, by definition, is based on federal, not state, law. Because the FTCA restricts its waiver to injuries "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b), his claim would be barred.[6]
 
 
 14
 On the other hand, if the tort is not "cognizable" under the FTCA, then § 2679(a) has no application in this case and Meyer's suit is authorized by the broad waiver of sovereign immunity embodied in the sue-and-be-sued provision. See Woodbridge Plaza, 815 F.2d at 542-43; Morrison-Knudsen, 811 F.2d at 1223.
 
 
 15
 In deciding whether a claim is or is not cognizable, courts appear to have established three broad categories. First, claims brought against sue-and-be-sued agencies that clearly fall under the FTCA's coverage--that is, for which the FTCA provides a cause of action--are cognizable under section 1346(b). As a consequence, the remedy provided by the FTCA is exclusive. That result derives directly from section 2679(a) and the Supreme Court's opinion in Loeffler, where it stated:
 
 
 16
 Congress expressly limited the waivers of sovereign immunity that it had previously effected through "sue-and-be-sued" clauses and stated that, in the context of suits for which it provided a cause of action under the FTCA, "sue-and-be-sued" agencies would be subject to suit only to the same extent as agencies whose sovereign immunity from tort suits was being waived for the first time.
 
 
 17
 486 U.S. at 562, 108 S.Ct. at 1973.
 
 
 18
 Second, claims against sue-and-be-sued agencies that do not sound in tort, and therefore escape the FTCA's ambit, are unaffected by section 2679(a). That much is clear from Loeffler, in which the Supreme Court held that limitations on a sue-and-be-sued waiver of sovereign immunity must be "expressly" created by Congress. 486 U.S. at 561, 108 S.Ct. at 1972. The waiver of sovereign immunity, in sum, is left intact as to non-tort causes of action. See also Woodbridge, 815 F.2d at 543-44 (holding that where a claim is not "within the exclusive purview of the FTCA ... the 'sue-and-be-sued' provision" remains available to waive the agency's sovereign immunity) (citing Franchise Tax Board v. United States Postal Service, 467 U.S. 512, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984)).
 
 
 19
 In the third hypothetical lies the real brain teaser. These are hybrid cases where the claim sounds in tort but is excluded from the FTCA's coverage. They fall into two subgroups: explicitly excluded claims, and implicitly excluded claims. The question in both instances is whether the fact that the FTCA does not provide a remedy means that the action is not cognizable under the Act.
 
 
 20
 For actions controlled by an explicit exclusion, the answer is clear. Claims labeled "exceptions" by 28 U.S.C. § 2680 are one such example.[7] Such claims, which would appear to be embraced by the FTCA's definition of torts for which the government has waived its immunity but which are specifically excepted pursuant to section 2680, are not actionable. They are, however, deemed "cognizable" under the FTCA. Safeway Portland Employees Fed. Credit Union v. FDIC, 506 F.2d 1213, 1215 (9th Cir.1974). Therefore, pursuant to section 2679, a sue-and-be-sued clause would not waive an agency's immunity as to such actions.[8]
 
 
 21
 The other, more difficult example concerns claims that sound in tort but are implicitly excluded from the FTCA's waiver of sovereign immunity. This is the case with torts for which state law would not impose liability on private persons, such as constitutional torts. Because "the constitutional tort is a child of federal law, the United States is not liable for such torts under the Federal Tort Claims Act." Bell, Proposed Amendment to the Federal Tort Claims Act, 16 Harv.J. on Legis. 1, 4 (1979); see also Pereira v. United States Postal Service, 899 F.2d 861, 864 (9th Cir.1990); Keene Corp. v. United States, 700 F.2d 836, 845 n. 13 (2d Cir.), cert. denied, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); Birnbaum v. United States, 588 F.2d 319, 322 (2d Cir.1978); Schuck, Suing Our Servants: The Court, Congress, and the Liability of Public Officials for Damages, 1980 Sup.Ct.Rev. 281, 356. See generally Dolan, Constitutional Torts and the Federal Tort Claims Act, 14 U.Richmond L.Rev. 281 (1980). We conclude, for the reasons that follow, that constitutional torts, in addition to being implicitly excluded from the FTCA, are also not cognizable under that statute.
 
 
 22
 The Seventh Circuit's exchange on this issue is most illuminating. In Baker v. F & F Investment Company, 489 F.2d 829 (7th Cir.1973), African-Americans brought a suit alleging violation of their Fifth and Thirteenth amendment rights by federal agencies, including the FSLIC. The defendants' argument that the FTCA applied and did not grant a remedy to the plaintiffs was characterized as both "elaborate" and "inherently suspect" by the court. Id. at 834-35. The Seventh Circuit proceeded to hold that subject matter jurisdiction existed for two reasons. First, addressing the issue of what we have called implicitly excluded claims, the court held:
 
 
 23
 Plaintiffs' claim against these defendants is based on federal law. The complaint does not allege, and the federal defendants do not concede, that the United States, if a private person, would be liable to plaintiffs in accordance with Illinois law. Since the complaint is based exclusively on federal law, the FTCA is inapplicable ... [T]he attempt to vindicate a right dependent, as here, upon federal statutes is not within the ambit of the FTCA.
 
 
 24
 Id. at 835.
 
 
 25
 Second, the court defeated the defendants' argument that the suit, being in reality a suit for tortious interference with contractual rights, was explicitly barred by 28 U.S.C. § 2680(h).[9] The court simply replicated its prior reasoning, stating that if this were "really a suit for interference with contract rights, then the FTCA would 'not apply' and the sue and be sued clauses would not be limited by § 2679(a), and the pre-FTCA consent to sue would not be affected." Id. at 836 (citation omitted).
 
 
 26
 Six years later, the Seventh Circuit reconsidered its Baker decision in FDIC v. Citizens Bank & Trust Co., 592 F.2d 364 (7th Cir.), cert. denied, 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979). That case involved a suit filed against the FDIC for a tort explicitly excluded from the FTCA; it did not involve any implicit exclusions. Reviewing decisions of other courts, the Seventh Circuit found that the FTCA "withdrew the sue-and-be-sued waiver of sovereign immunity" for explicitly excluded torts. Id. at 369. As most courts had ruled, even though a claim is labeled an exception under the FTCA, it nonetheless is "cognizable" for purposes of § 1346(b). Id. at 370; see Safeway Portland, 506 F.2d at 1215; Edelman v. FHA, 382 F.2d 594, 596-97 (2d Cir.1967). Therefore, it overruled Baker on this point.
 
 
 27
 However, Citizens Bank left undisturbed Baker's second prong, namely that "because the claim arose under federal law it was not within the ambit of the Act." 592 F.2d at 370. Indeed, it expressly distinguished the facts of the two cases, remarking that "the conduct alleged in Baker ... was not the kind of conduct a private person (see § 1346(b)) would ever have an opportunity to engage in, which suggests that Congress did not intend the Federal Tort Claims Act to apply." Id. at 370 n. 8. In sum, there is a difference, for purposes of "cognizability," between claims explicitly excepted by the FTCA and those implicitly excluded by virtue of the FTCA's own definition--that is, claims where no private person would be liable under the law of the state.[10] The former are "cognizable" under the FTCA, while the latter are not.
 
 
 28
 Support for this view can be found by comparing Safeway Portland with First Empire Bank v. FDIC, 572 F.2d 1361 (9th Cir.), cert. denied, 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978). As mentioned above, in Safeway Portland, we found that torts explicitly excluded from the FTCA are "cognizable" under the statute. Id. at 1215 (quoting Edelman, 382 F.2d at 597). And yet, in First Empire, we held the FDIC liable on a claim based on federal law without even mentioning the immunity argument. As noted in Federal Deposit, short of surreptitiously overruling Safeway Portland, First Empire must stand for the position that "a tort claim arising under federal law is not subject to the Act." Citizens Bank, 592 F.2d at 372.
 
 
 29
 Language from a large number of courts corroborates this position. For example, in Birnbaum, plaintiffs brought suit alleging that the Central Intelligence Agency ("CIA") had unlawfully opened letters from the Soviet Union. Besides discussing a number of causes of action cognizable under state law, the court scrupulously examined the claim alleging a constitutional violation:
 
 
 30
 The District Court also held that the violation of plaintiffs' federal constitutional rights is a separate ground for liability under state law. We do not believe that the Federal Tort Claims Act comprehends federal constitutional torts in its reference to the "law of the place" under § 1346(b)....
 
 
 31
 Since Congress restricted the basis for liability under the Act to the 'law of the place,' we think that it would be a tour de force to consider direct violations of the federal constitution as "local law" torts.
 
 
 32
 588 F.2d at 327-28 (footnote omitted) (emphasis in original); see also Keene, 700 F.2d at 845 n. 13 (remarking that "Bivens -type actions against the United States are ... routinely dismissed for lack of subject-matter jurisdiction"). These cases fortify the view that constitutional torts are not cognizable under the FTCA.
 
 
 33
 The FSLIC asserts that Pereira and its forebears[11] stand for the proposition that the sue-and-be-sued language does not waive its immunity for constitutional torts. In Pereira, plaintiff brought a First Amendment suit against the United States Postal Service ("USPS"). 899 F.2d at 862. Holding that the Postal Service was immune from suit despite its sue-and-be-sued clause, we stated:
 
 
 34
 The Federal Tort Claims Act ... provides a waiver of sovereign immunity for tortious acts of an agency's employees only if such torts committed in the employ of a private person would have given rise to liability under state law. Therefore federal district courts have no jurisdiction over the United States where claims allege constitutional torts.
 
 
 35
 The "sue and be sued" language of the Postal Service's charter should not be interpreted to enlarge the waiver of sovereign immunity specified by the FTCA.... [T]he Postal Service cannot be sued for constitutional torts ...
 
 
 36
 Id. at 864.
 
 
 37
 We find Pereira inapposite for purposes of the instant case.[12] Pereira, as well as the three cases to which it cites on this issue, involved a claim against the USPS. Like the FSLIC, the USPS is a sue-and-be-sued federal agency; unlike claims against the FSLIC, however, claims against the USPS are governed by 39 U.S.C. § 409(c).[13] Section 409(c) provides: "The provisions of chapter 171 and all other provisions of title 28 relating to tort claims shall apply to tort claims arising out of activities of the Postal Service." Its import is to make the FTCA the sole possible avenue of relief for all torts committed by the USPS, whether or not the FTCA actually provides a remedy. In other words, section 409(c) has effectively read out tort actions from the general waiver of sovereign immunity embodied in the Postal Service's sue-and-be-sued clause. See Pereira, 899 F.2d at 863 (noting that the USPS's sue-and-be-sued waiver of sovereign immunity "is limited with respect to tort claims" by virtue of 39 U.S.C. § 409(c)).
 
 
 38
 Because the FTCA does not provide a remedy for constitutional torts, the United States has not waived its immunity for such torts when committed by the Postal Service. In light of this limitation on the sue-and-be-sued clause, we could not have found that language to have authorized a suit against the Postal Service for constitutional torts. Congress has enacted no such restriction on the general waiver of the FSLIC's immunity. For that reason, Pereira does not control this case.[14]
 
 
 39
 Nor are we persuaded by the FSLIC's argument that its interpretation best matches congressional intent. First, it cites Congress' wish to "place torts of 'suable' agencies of the United States upon precisely the same footing as torts of 'nonsuable' agencies." H.R.Rep. No. 1287, 79th Cong., 1st Sess., 6 (1945). Because the latter cannot be sued directly for constitutional torts, it argues, nor can the former.
 
 
 40
 Despite its force, the logic is not failproof. The Supreme Court case interpreting Congress' statement made it clear that "in the context of suits for which it provided a cause of action under the FTCA, 'sue-and-be-sued' agencies would be subject to suit only to the same extent as agencies whose sovereign immunity from tort suits was being waived for the first time." Loeffler, 486 U.S. at 562, 108 S.Ct. at 1973 (emphasis added). Congress, in sum, begged the very question raised by this case, namely whether constitutional torts are torts for which Congress "provided a cause of action under the FTCA." Hence, Meyer's view is equally consistent with legislative intent, leaving suable and nonsuable agencies on equal terms whenever, and to the extent that, the FTCA applies.
 
 
 41
 The FSLIC's second, more powerful retort is to point to the 1988 Liability Reform Act amending the FTCA. As outlined earlier, see supra note 8, section 2679 has two prongs: the first is addressed to sue-and-be-sued agencies, § 2679(a); the second to federal employees, § 2679(b). In relevant part, both purport to provide exclusive FTCA remedies against the United States.[15] However, under the amendment, Congress specifically held that federal employees were not immunized by section 2679(b) for civil actions "brought for a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(2)(A). The absence of a comparable restriction under section 2679(a) lends credence to the view that the Act also precludes constitutional tort suits against sue-and-be-sued agencies.
 
 
 42
 However, we reject that argument. Besides the fact that interpreting the sounds of legislative silence remains an uncertain science, there is another way of reading Congress' action. As Justice Stevens points out in his Smith dissent, section 2679(b)(2)(A) is of questionable usefulness: "Congress did not need to add this amendment ... because ... constitutional torts are, for the most part, outside the realm of common-law torts," Smith, 111 S.Ct. at 1193 (Stevens, J., dissenting), and therefore unaffected by the FTCA or its amendments. As a result, it is at least arguable that its inclusion was meant as a reminder, an added guarantee made necessary by the amendment's potential ambiguity on this point.[16]
 
 
 43
 Moreover, other differences between Congress' treatment of actions against federal agencies and against federal employees should be noted. The provision addressing the former is remarkably succinct. As we have seen, it does not mention that constitutional tort suits might still be viable against sue-and-be-sued agencies, compare 28 U.S.C. § 2679(b)(2)(A); but, by the same token, neither does it mention the continued applicability of the FTCA's explicit limitations. Compare 28 U.S.C. § 2679(d)(4). It follows no more logically from the absence of the former that agencies are immune from constitutional tort claims than it does from the absence of the latter that they are not immune from tort suits expressly excepted under section 2680.
 
 
 44
 Accordingly, for the reasons set out above, we find that Meyer's action against the FSLIC alleging deprivation of property without due process of law is not barred by the doctrine of sovereign immunity. The district court's ruling on this matter is affirmed.[17]
 
 III.
 
 45
 We next address Meyer's claim that he was unconstitutionally deprived of his property interest without due process of law. We review this question de novo. United States v. McConney, 728 F.2d 1195, 1203 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 
 46
 In Board of Regents v. Roth, 408 U.S. 564, 576-77, 92 S.Ct. 2701, 2708-09, 33 L.Ed.2d 548 (1972), and Perry v. Sindermann, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972), the Supreme Court held that to have a property interest, an individual must possess an entitlement to the benefit. Entitlements are created not by the Constitution, but by "independent source[s] such as state law." Roth, 408 U.S. at 577, 92 S.Ct. at 2709. Relying on Cleary v. American Airlines, Inc., 111 Cal.App.3d 443, 168 Cal.Rptr. 722 (1980), and Pugh v. See's Candies, Inc., 116 Cal.App.3d 311, 171 Cal.Rptr. 917 (1981), the district court found that Meyer had stated a proper claim under state law for enjoyment of continued employment. See also Foley, 47 Cal.3d at 676-82, 254 Cal.Rptr. at 222-26, 765 P.2d at 384-88.[18] The terms and conditions of Meyer's employment that support his claim include his sixteen years of service for Fidelity, his frequent promotions and commendations and Fidelity's general policy of termination only upon a showing of good cause.
 
 
 47
 The FSLIC urges that, notwithstanding Fidelity's conduct, a contract for indefinite employment barring good cause was in excess of governing federal regulations. 12 C.F.R. § 563.39, in effect at the time of appellee's termination, provided that:
 
 
 48
 An insured institution shall not enter into an employment contract with any of its officers or other employees if such contract would constitute an unsafe or unsound practice ... [T]he making of such an employment contract would be an unsafe or unsound practice if such contract could lead to material financial loss or damage to the insured institution or could materially interfere with the exercise by the members of its board of directors of their duty of discretion provided by law, charter, bylaw or regulation as to the employment of an officer or employee of the institution. This may occur, depending upon the circumstances of the case, where an employment contract provides for an excessive term, or does not contain an appropriate termination for cause provision.
 
 
 49
 Cf. United States v. Gaubert, --- U.S. ----, 111 S.Ct. 1267, 1277, 113 L.Ed.2d 335 (1991) (describing the FSLIC's "broad statutory authority"). The FSLIC's argument is that by virtue of 12 C.F.R. § 563.39, Meyer never enjoyed a property interest in continued employment. Because a guarantee of continued employment would be inconsistent with section 563.39, it follows that it must be considered non-enforceable.
 
 
 50
 As support for its position, the FSLIC invokes Inglis v. Feinerman, 701 F.2d 97 (9th Cir.1983), cert. denied, 464 U.S. 1040, 79 L.Ed.2d 168 (1984), and Bollow v. Federal Reserve Bank, 650 F.2d 1093 (9th Cir.1981), cert. denied, 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982). In both cases, plaintiffs asserted that their employment contracts gave rise to property interests that were unconstitutionally terminated. Inglis, 701 F.2d at 99; Bollow, 650 F.2d at 1096. The court disagreed. In Inglis, the employer was a federal bank created under the Federal Home Loan Bank Act, 12 U.S.C. § 1421 et seq., 701 F.2d at 98; in Bollow, it was a federal reserve bank governed by the Federal Reserve Act of 1913, 12 U.S.C. § 341, Fifth. 650 F.2d at 1097. The two relevant statutes gave the employer the power "to dismiss at pleasure" officers and employees. Inglis, 701 F.2d at 98; Bollow, 650 F.2d at 1097. Despite allegations that the bank's overall conduct and communications amounted to a promise of continued employment, the court held such purported pledges to be void and nonenforceable in light of inconsistent and controlling federal statutes. 701 F.2d at 98; 650 F.2d at 1099-100. See also Aalgaard, 224 Cal.App.3d 674, 274 Cal.Rptr. 81 (construing in similar fashion the National Banking Act, 12 U.S.C. § 24, Fifth).
 
 
 51
 Although the analogy is seductive, it ultimately must fail. To begin with, there is no equivalent "dismissal at pleasure" language in the instant case. It is one thing to have a federal statute that grants banks the power to terminate employment contracts at will, quite another to forbid insured associations from entering into burdensome or unsafe contracts. Where the former clearly collides with a "for cause" provision, the latter, at most, qualifies it. As Meyer remarks, it is perfectly plausible that a contract contemplating dismissal only for good cause would not "constitute an unsafe or unsound practice" under 12 C.F.R. § 563.39.
 
 
 52
 More importantly, the cases cited by the FSLIC all involve federal banks created under federal statutes. Here, although governed in part by federal law, the employer was a state-chartered savings institution. Federal law, which somehow "preempted" state law claims, see Inglis, 701 F.2d at 98 (explaining that Bollow "construed [12 U.S.C. § 341 (Fifth) ] as preempting employee claims of wrongful discharge based on state law"); Aalgaard, 224 Cal.App.3d 674, 274 Cal.Rptr. at 92 (finding that 12 U.S.C. § 24, Fifth preempted California law), does not preempt Meyer's action--nor indeed does the FSLIC claim that it does. In short, the contract allegedly created between Fidelity and Meyer cannot be voided on this ground.
 
 
 53
 The FSLIC directs its second set of arguments to the particularities of receivership law. First, it points to the broad power granted by Congress to federal receivers, citing their responsibility "to proceed to liquidate its assets in an orderly manner, whichever shall appear to be to the best interests of the insured members of the association in default." 12 U.S.C. § 1729(b) (repealed 1989). To compel the FSLIC to conduct a hearing before exercising its authority would, it is argued, be inconsistent with congressional intent.
 
 
 54
 Second, the FSLIC contends that its actions also are expressly permitted under California law because it incorporates applicable federal law. Indeed, California Financial Code § 9103 (repealed 1983), provides that a state receiver, "shall have all the rights, privileges and powers conferred upon it by federal statutes now or hereafter enacted." See Fidelity Savings & Loan Ass'n v. Federal Home Loan Bank Board, 689 F.2d 803, 810 (9th Cir.1982) (stating that under this provision, "California law thus incorporates all federal law concerning the powers of the FSLIC as receiver"), cert. denied, 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983).
 
 
 55
 Once again, the FSLIC's argument is appealing. Stated somewhat differently, the contention is that Meyer's purported entitlement to continued employment was, from its very inception, defined conditionally, limited by the prospect of Fidelity's placement in receivership. With the implicit promise came the implied caveat.
 
 
 56
 Ultimately, however, this reasoning also is flawed. The source of Meyer's property right was California common law, a history of satisfactory employment, and an understanding of fair dealing. The fact that federal and, arguably, state law conferred wide discretion to receivers to repudiate "burdensome" contracts does not, retrospectively, annul the state entitlement. In FDIC v. Mallen, 486 U.S. 230, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988), for example, the president and director of a federally insured bank was indicted on a number of charges. Id. at 236, 108 S.Ct. at 1785. As a result, the FDIC suspended him pursuant to 12 U.S.C. § 1818(g)(1), which authorizes precisely such action. Id. at 237-38, 108 S.Ct. at 1786-87. Reading the case through the FSLIC's eyes, one would be tempted to say that there had been no deprivation of a property interest, since the interest itself was contingent upon the plaintiff not being indicted--in other words, the president's entitlement to continued employment could not survive his indictment, for that would be inconsistent with the FDIC's right to dismiss under federal regulations.
 
 
 57
 The Court, however, saw it differently. Without hesitation, it found that the plaintiff's right to continue as president was "protected by the Fifth Amendment Due Process Clause," and that "the FDIC's order of suspension affected a deprivation of this property interest." Id. at 240, 108 S.Ct. at 1787.[19] That the suspension was foretold made it no less of a deprivation.[20]
 
 
 58
 Undoubtedly, federal receivership law reflects the urgency of the situation facing savings and loan institutions. The right given receivers to dispose expeditiously of burdensome contracts is an outgrowth of this emergency; but the weight of the federal interest goes to the question of what, not whether, process is due. The facts alleged in this case suggest that the FSLIC arbitrarily terminated some employees while retaining others. Meyer, for his part, was never given an opportunity to hear or be heard, and it was never determined--at least not openly--that keeping him aboard would somehow destabilize the entire crew. At a minimum, Meyer "must be given some kind of notice and afforded some kind of hearing"--"rudimentary precautions" guaranteed by the due process clause. Goss, 419 U.S. at 579, 581, 95 S.Ct. at 738, 740 (emphasis in original). Accordingly, we affirm the district court on this point.
 
 IV.
 
 59
 Meyer also brought a Bivens action against Pattullo stemming from the alleged violation of plaintiff's Fifth Amendment rights. See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). While the FTCA presents no bar to Meyer's Bivens action, he faces a different kind of obstacle in his suit against Pattullo. An official in Pattullo's position is entitled to qualified immunity when his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); see also Finkelstein v. Bergna, 924 F.2d 1449, 1451 (9th Cir.1991); Thorsted v. Kelly, 858 F.2d 571, 573 (9th Cir.1988). Thus, "[t]he relevant inquiry is whether a reasonable government official could have believed that his conduct was lawful, in light of clearly established law and the information he possessed." Thorsted, 858 F.2d at 573 (citing Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).
 
 
 60
 In this case, after having received instructions from the court that were challenged by the plaintiff, the jury returned a verdict in favor of Pattullo on the grounds of qualified immunity. The court's instructions were as follows:
 
 
 61
 The law provides government officials, such as the defendant, Robert Pattullo, with a defense of alleged violation of federal constitution and statutory law which is known as qualified immunity....
 
 
 62
 The defendant, Robert Pattullo, is entitled to the defense and has asserted the defense of qualified immunity if he can establish by a preponderance of the evidence that a reasonable government official confronted with similar circumstances in this case could have been believed [sic] that his actions were lawful.
 
 
 63
 In determining whether a defendant, such as Robert Pattullo, is entitled to the defense of qualified immunity, you must consider whether the defendant could have reasonably believed that his actions were lawful in light of the defendants' official duties, the character of his official position, the facts of which he was aware, and the events which confronted him.
 
 
 64
 The reasonableness of the defendant Pattullo's belief is determined by the reasonable person's standard. It is not what the defendant Pattullo subjectively believed, but whether his belief that his actions in terminating the plaintiff were reasonable when judged by professional standards.
 
 
 65
 We begin, uncharacteristically, with substantial agreement: neither party disputes that the jury was improperly instructed. In light of controlling precedent, a proper instruction should refer both to the factors enumerated in this case and to "clearly established law." See, e.g., Thorsted, 858 F.2d at 573. The district court rejected plaintiff's and defendants' proposed instructions, both of which met this requirement; clearly, it was in error.[21] This, however, does not end the inquiry.
 
 
 66
 As we recently noted, the trial court has wide latitude in formulating instructions and will be reviewed for abuse of discretion only. Benigni v. City of Hemet, 879 F.2d 473, 479 (9th Cir.1988); Thorsted, 858 F.2d at 573. The reviewing court must determine "whether, considering the charge as a whole, the court's instructions fairly and adequately covered the issues presented, correctly stated the law, and were not misleading." Thorsted, 858 F.2d at 312. An error of instruction will not be reversed "if it is more probably than not harmless." Benigni, 879 F.2d at 479; see also Kisor v. Johns-Mansville Corp., 783 F.2d 1337, 1340 (9th Cir.1986) ("We must consider whether the instruction ... [is] to the prejudice of the objecting party").
 
 
 67
 We conclude that the error in this case was non-prejudicial based on our finding that, as a matter of law, " 'the facts alleged ... [do not] support a claim of violation of clearly established law.' " Vaughan v. Ricketts, 859 F.2d 736, 739 (9th Cir.1988) (quoting Mitchell v. Forsyth, 472 U.S. 511, 528 n. 9, 105 S.Ct. 2806, 2816 n. 9, 86 L.Ed.2d 411 (1985)), cert. denied, 490 U.S. 1012, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989). Although we believe Meyer's claim has merit, see supra Part III, "a reasonable officer ... could have believed his actions toward [Meyer] were constitutional even if they were not." Wood v. Ostrander, 879 F.2d 583, 591 (9th Cir.1989), cert. denied, --- U.S. ----, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990).[22]
 
 
 68
 Rules governing federally insured institutions and federal receivership make for treacherous law. Indeed, the district court went so far as to reverse itself, initially finding that Meyer did not have a legitimate expectation of continued employment. In order to be clearly established,
 
 
 69
 [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.
 
 
 70
 Anderson, 483 U.S. at 640, 107 S.Ct. at 3039 (citation omitted); see also F.E. Trotter, Inc. v. Watkins, 869 F.2d 1312, 1315 (9th Cir.1989); Brady, 859 F.2d at 1556. In light of the complex nature of Meyer's entitlement, reflected in both the district court's and our own examination of the issue, we are unable to say that Anderson's standard has been met. The issue of qualified immunity should not have been submitted to the jury because Pattullo violated no clearly established law. See Schwartzman v. Valenzuela, 846 F.2d 1209, 1211 (9th Cir.1988) (question of clearly established right is question of law). Thus, any error in the qualified immunity instruction was harmless.
 
 V.
 
 71
 Finally, Meyer contends that the district court erred by excluding expert testimony regarding the state of the law. A court's decision to exclude evidence is reviewed for abuse of discretion. Ignacio v. People of the Territory of Guam, 413 F.2d 513, 520 (9th Cir.1969), cert. denied, 397 U.S. 943, 90 S.Ct. 959, 25 L.Ed.2d 124 (1970).
 
 
 72
 On numerous past occasions, this court has "condemned the practice of attempting to introduce law as evidence." United States v. Unruh, 855 F.2d 1363, 1376 (9th Cir.1987), cert. denied, 488 U.S. 974, 109 S.Ct. 513, 102 L.Ed.2d 548 (1988). Indeed, "[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge." Marx & Co., Inc. v. Diners' Club, Inc., 550 F.2d 505, 509-10 (2d Cir.), cert denied, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977). If judges are advised to reject expert testimony on legal matters, surely it cannot be reversible error when they do so.
 
 Conclusion
 
 73
 There are, essentially, two threshold matters in this case: the first is the FSLIC's immunity, and the second, Pattullo's. For the foregoing reasons, the district court's disposition on both issues is hereby
 
 
 74
 AFFIRMED.
 
 
 
 [1]
 On April 13, 1983, the FSLIC as receiver and the newly created federally chartered Fidelity Savings & Loan ("Fidelity Federal") executed an "Acquisition Agreement," whereby they purchased virtually all of Fidelity's assets and assumed practically all of its liabilities. The following day, the FSLIC acquired all remaining assets and undertook to pay all remaining liabilities
 Subsequently, on September 28, 1982, the FSLIC in both its corporate and receivership capacities transferred the assets and liabilities of Fidelity Federal to Citicorp Bank, which in turn transferred the assets and liabilities to its wholly owned subsidiary, Citicorp Savings and Loan.
 
 
 [2]
 On January 23, 1985, the district court issued an order dismissing a number of Meyer's claims, including his claim under the Fifth Amendment. However, on December 5, 1986, the court having reconsidered sua sponte its previous order, reinstated plaintiff's claim for deprivation of property without due process of law against the FSLIC and Pattullo
 
 
 [3]
 The trial was held before a magistrate pursuant to a stipulation and order entered February 16, 1989
 
 
 [4]
 Although the Federal Deposit Insurance Corporation ("FDIC") is the statutory successor to the FSLIC, see 12 U.S.C. § 1821(a), this opinion refers to the FSLIC as it was the FSLIC's interest that was litigated throughout the suit
 
 
 [5]
 In addition, under the FTCA,
 [T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
 28 U.S.C. § 1346(b).
 
 
 [6]
 If this case is governed by the FTCA, other obstacles stand in Meyer's way. For instance, he would have had to bring his action against the United States and meet the administrative exhaustion requirements
 
 
 [7]
 Thus, the FTCA "shall not apply to ... [a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter ... [a]ny claim for damages caused by the imposition or establishment of a quarantine by the United States ... [a]ny claim arising in a foreign country...." 28 U.S.C. § 2680(k)
 
 
 [8]
 We find support for this position in a recent Supreme Court decision. At issue in United States v. Smith, --- U.S. ----, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991), was the interplay between the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("Liability Reform Act") and the FTCA. Under section 5 of the Liability Reform Act, "[t]he remedy against the United States" pursuant to the FTCA "is exclusive of any other civil action or proceeding for money damages...." 28 U.S.C. § 2679(b)(1). In a sense, section 2679(b)(1) is thus the counterpart, as applied to federal employees, of section 2679's exclusivity provision directed at "sue-and-be-sued" agencies
 The problem in Smith was that the FTCA did not provide a remedy against the government because the alleged injury had occurred abroad and section 2680(k) of the FTCA specifically precludes recovery in such instances. The question, therefore, was "whether, by designating the FTCA as the 'exclusive remedy,' § 5 precludes an alternative method of recovery against a government employee in cases where the FTCA itself does not provide a means of recovery." 111 S.Ct. at 1185.
 Reversing our court's prior holding, the Supreme Court held that "s 5 makes the FTCA the exclusive mode of recovery for the tort of a Government employee even when the FTCA itself precludes Government liability." Id. In reaching this decision, the Court relied on statutory language addressed to the federal employee prong of section 2679 that is absent from its federal agency equivalent. Indeed, section 2679(d)(4) expressly provides that suit "shall proceed in the same manner as any action against the United States filed pursuant to section 1346(b) of this title and shall be subject to the limitations and exceptions applicable to those actions." 28 U.S.C. § 2679(d)(4) (emphasis added); see also 111 S.Ct. at 1185. Still, we are persuaded by the reasoning of the Supreme Court and by the holdings of various sister courts that suits predicated on tortious acts specifically excluded from the ambit of the FTCA cannot be brought against a federal agency, the existence of a sue-and-be-sued provision notwithstanding.
 
 
 [9]
 Section 2680(h) provides that the FTCA will not apply to "[a]ny claim arising out of ... interference with contract rights."
 
 
 [10]
 This distinction appears to have guided the district court in the instant case. Indeed, although the district court dismissed Meyer's state tort claims because they fell under two exceptions explicitly mentioned in section 2680 of the FTCA, he agreed to hear plaintiff's constitutional allegation
 
 
 [11]
 McCollum v. Bolger, 794 F.2d 602 (11th Cir.1986), cert. denied, 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 836 (1987); Insurance Co. of N. Am. v. United States Postal Serv., 675 F.2d 756 (5th Cir.1982); Contemporary Mission, Inc. v. United States Postal Serv., 648 F.2d 97 (2d Cir.1981)
 
 
 [12]
 We note that a district court has cited Pereira on facts strikingly parallel to our own. In Rush v. FDIC, 747 F.Supp. 575 (N.D.Cal.1990), plaintiff brought a suit alleging in part that his termination by the FDIC constituted a deprivation of property without due process of law. Id. at 576. Dismissing this portion of the plaintiff's claim, the district court held Pereira to be dispositive. Id. at 579 (holding that "[s]ince plaintiff cannot allege a constitutional tort under the FTCA, the sovereign immunity of the United States and its agencies remains intact")
 
 
 [13]
 Section 409(c) was expressly invoked by all four courts. See Pereira, 899 F.2d at 863; McCollum, 794 F.2d at 608; Insurance Co. of N. Am., 675 F.2d at 758; Contemporary Mission, 648 F.2d at 104 n. 9
 
 
 [14]
 In fact, Pereira does not explicitly refer to section 2679 at all. It is also noteworthy that two of the cases cited by Pereira are simply inapposite. In Insurance Co. of N.Am., the court affirmed the dismissal of plaintiff's claim that the Postal Service had negligently lost bags containing currency. 675 F.2d at 757. The court's holding thus stands for the unremarkable proposition that since plaintiff's claim was a strict common-law tort action, subject to the exceptions of the FTCA, and because section 2680(b) states that section 1346 does not apply to "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter," the suit was barred, notwithstanding the sue-and-be-sued clause. Id. at 758. The court never mentioned the issue of constitutional torts, nor need it have
 As for the second case, Contemporary Mission, the relevant portion of the opinion is limited to a footnote in which it is stated:
 [T]he district court correctly determined that it lacked subject matter jurisdiction over the claims against the United States Postal Service that were based upon certain postal officials' alleged interference with plaintiff's constitutional rights. The waiver of sovereign immunity contained in 28 U.S.C. § 1346(b) (1976) is limited to suits predicated upon a tort cause of action cognizable under state law.
 648 F.2d at 104 n. 9. Bereft of any mention of the sue-and-be-sued clause, the statement simply echoes a familiar point, namely that constitutional torts are not embraced by the FTCA's waiver of sovereign immunity. See supra at 568.
 
 
 [15]
 Section 2679(a) grants immunity to sue-and-be-sued agencies for claims cognizable under the Act; under section 2679(b), "[t]he remedy against the United States provided by Sections 1346(b) and 2672 of this title ... is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee...."
 
 
 [16]
 Legislative history is only faintly enlightening. In distinguishing between common law and constitutional torts, the House Committee Report simply explains:
 [T]he term "common law tort" embraces not only those state law causes of action predicated on the "common" or case law of the various states, but also encompasses traditional tort causes of action codified in state statutes that permit recovery for acts of negligence.... It is well established that the FTCA applies to such codified torts.... A constitutional tort action, on the other hand, is a vehicle by which an individual may redress an alleged violation of one or more fundamental rights embraced in the Constitution.
 H.R.Rep. No. 100-700, p. 6 (1988) (emphasis added).
 
 
 [17]
 The district court's opinion is strengthened by a final observation. "Constitutional torts" is a convenient catch-phrase, but like all catch-phrases, neither particularly accurate, nor particularly helpful. Even if all torts--whether of constitutional or common law origin--were considered cognizable under the FTCA, there is a question whether all "constitutional torts" are properly understood as torts. As the Supreme Court has noted,
 In some cases, the interests protected by a particular branch of the common law of torts may parallel closely the interests protected by a particular constitutional right.... In other cases, the interests protected by a particular constitutional right may not also be protected by an analogous branch of the common law of torts.
 Carey v. Piphus, 435 U.S. 247, 258, 98 S.Ct. 1042, 1049, 55 L.Ed.2d 252 (1978). In the latter situation, it would seem incongruous to bar an action against a sue-and-be-sued agency by invoking the FTCA when the underlying action was not a tort action at all.
 Whether or not such be the case here is debatable. In Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), the Court first suggested that a constitutional claim arising out of a discharge without due process of law could be analogized to a common law action for breach of contract, see id. at 639 & n. 19, 100 S.Ct. at 1409 & n. 19, only to proceed to describe it as a tort action a few pages later. See id. at 642, 100 S.Ct. at 1411.
 What we do know, however, is that the closest common law analogy to Meyer's claim is breach of an implied covenant of good faith and fair dealing, see infra, and that under California law, it is established that "tort remedies are not available for breach of the implied covenant in an employment contract to employees who allege they have been discharged in violation of the covenant." Foley v. Interactive Data Corp., 47 Cal.3d 654, 700, 254 Cal.Rptr. 211, 239-40, 765 P.2d 373, 401-02 (1980). Rather, "contractual remedies should remain the sole available relief." Id. at 696, 254 Cal.Rptr. at 236, 765 P.2d at 398; see also Mundy v. Household Finance Corp., 885 F.2d 542, 544 (9th Cir.1989); Aalgaard v. Merchants Nat. Bank, Inc., 224 Cal.App.3d 674, 678 n. 1, 274 Cal.Rptr. 81, 82 n. 1 (1990). Compare, e.g., Love v. United States, 915 F.2d 1242, 1247 & n. 3, 1248 (9th Cir.1989) (finding that, under Montana law, the "implied covenant of good faith and fair dealing" is "recognize[d] as a separate cause of action in tort") (citing Nicholson v. United Pacific Ins. Co., 219 Mont. 32, 710 P.2d 1342, 1348 (1985)). That Meyer's claim does not sound in tort under California law further discredits the invocation of the FTCA to bar his action.
 
 
 [18]
 In Cleary, plaintiff had worked to the employer's satisfaction for 18 years. 111 Cal.App.3d at 447, 168 Cal.Rptr. at 724. The court stated that termination "of employment without legal cause after such a period of time offends the implied in law covenant of good faith and fair dealing contained in all contracts, including employment contracts." 111 Cal.App.3d at 455, 168 Cal.Rptr. at 729. In Pugh, the court found that some employers' conduct could give "rise to an implied promise that it would not act arbitrarily" in its dealing with employees. 116 Cal.App.3d at 329, 171 Cal.Rptr. at 927. In particular, the court looked at "the duration of [plaintiff's] employment, the commendations and promotions he received, the apparent lack of any direct criticism of his work, the assurances he was given, and the employer's acknowledged policies." Id. See also Russell v. Mass. Mut. Life Ins. Co., 722 F.2d 482, 492 n. 10 (9th Cir.1983), rev'd on other grounds, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)
 In Foley, the California Supreme Court disapproved of Cleary's holding "to the extent that [it] permit[s] a cause of action seeking tort remedies for breach of the implied covenant." 47 Cal.3d at 700 n. 42, 254 Cal.Rptr. at 240 n. 42, 765 P.2d at 401; see also supra at note 18. However, the type of remedy available has no bearing on the issue whether Meyer enjoyed a reasonable expectation of continued employment. Foley itself makes this pellucidly clear by relying extensively on Pugh and, specifically, on the factors the court deemed critical in that case to find an implied promise. 47 Cal.3d at 676-82, 254 Cal.Rptr. at 222-26, 765 P.2d at 384-88.
 
 
 [19]
 In Mallen, of course, the statute did in fact give the suspended officer the right to a post-suspension hearing. It should be noted, however, that the right was given only after an initial statute that permitted suspension without a hearing had been ruled unconstitutional. Id. at 234, 108 S.Ct. at 1784. The point, simply, is that the existence of a provision allowing for termination or suspension in the event some occurrence were to take place does not simultaneously redefine the property interest at stake. Indictment did not trigger an interruption of constitutional protection; neither should receivership
 
 
 [20]
 Likewise, in ruling that a state-created entitlement to education meant that students could not be suspended on grounds of misconduct without due process, the Court in Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), was unmoved by the existence of a state law permitting such action. In particular, the Court rejected the dissent's reasoning, reminiscent of the FSLIC's in this case:
 The Ohio statute that creates the right to a "free" education also explicitly authorizes a principal to suspend a student for as much as 10 days. Thus the very legislation which "defines" the "dimension" of the student's entitlement, while providing a right to education generally, does not establish this right free of discipline imposed in accord with Ohio law.
 419 U.S. at 586-87, 95 S.Ct. at 742-43 (Powell, J., dissenting) (citation omitted).
 
 
 [21]
 Arguably, the district court's decision to submit the question of qualified immunity to the jury means that it "necessarily found that the legal rules were clearly established in this area." Brady v. Gebbie, 859 F.2d 1543, 1556 (9th Cir.1988), cert. denied, 489 U.S. 1100, 109 S.Ct. 1577, 103 L.Ed.2d 943 (1989). The court's conviction is not the issue, however; rather, it is the propriety of its explanation of the law to the jurors
 
 
 [22]
 It will not suffice to say, as plaintiff does, that Roth and Perry had clearly established the applicable law some 19 years ago. The heart of the problem, no doubt, lies in the "level of generality at which the relevant 'legal rule' is to be identified." Anderson, 483 U.S. at 639, 107 S.Ct. at 3038-39; see also Schlegel v. Bebout, 841 F.2d 937, 944 (9th Cir.1988). As the level narrows, so too diminishes the likelihood that the official will be vulnerable to suit. Predictably, Meyer chooses to define the legal rule in as broad a manner as possible, evoking the right not to "be deprived of a constitutionally protected property interest until and unless he is afforded a due process hearing." Conversely, and just as predictably, Pattullo focuses on the narrowest possible definition, describing "FSLIC's termination of employees of a failed financial institution pursuant to takeover or liquidation" and "federal receivership law."
 Because we find that a federal employee could reasonably have believed in the lawfulness of the actions at issue, we need not decide between these conflicting definitions. Still, we are mindful of the Supreme Court's admonition that
 the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right.... But if a test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of Harlow.
 Anderson, 483 U.S. at 639, 107 S.Ct. at 3039.